UNITED STATES of America, Plaintiff-Appellee,

v.

Isabel Rodriguez DE VARON, Defendant-Appellant.

No. 96-5421.

United States Court of Appeals,

Eleventh Circuit.

May 14, 1999.

Appeal from the United States District Court for the Southern District of Florida. (No. 96-576-CR-KMM), K. Michael Moore, Judge.

Before HATCHETT, Chief Judge, TJOFLAT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK, CARNES, BARKETT, HULL and MARCUS, Circuit Judges, and GODBOLD, Senior Circuit Judge.

MARCUS, Circuit Judge:

The central issue presented in this appeal is whether the district court clearly erred in denying a drug courier who imported 512.4 grams of 85 percent pure heroin from Colombia into the United States a two-point downward adjustment for her minor role in the offense under § 3B1.2 of the United States Sentencing Guidelines. U.S. Sentencing Guidelines Manual § 3B1.2 (1996) [hereinafter U.S.S.G.]. We hold that the district court did not commit clear error, that there was in fact ample evidence in the record to support its determination that the defendant did not play a minor role in the offense, and, finally, that the district court did not misapprehend either the law of this Circuit or the rules established in the Guidelines. Accordingly, we affirm the judgment of the district court.

More broadly, we reaffirm our longstanding view that a district court's determination of whether a defendant qualifies for a minor role adjustment under the Guidelines is a finding of fact that will be reviewed only for clear error. We reemphasize, moreover, that the proponent of the downward adjustment bears the burden at all times of establishing her role in the offense by a preponderance of the evidence. Finally, we believe that two legal principles should guide the district court in this fact-finding endeavor. First and foremost, the district court must measure the defendant's role against her relevant conduct, that is, the conduct

for which she has been held accountable under U.S.S.G. § 1B1.3. The Guidelines and our case precedent plainly require the district court to undertake this method of analysis in every case where a role adjustment is at issue. *See* U.S.S.G. Ch. 3, Pt. B, intro. comment. Second, where the record evidence is sufficient, the district court may also measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant. *See* U.S.S.G. § 3B1.2, comment. (n.3). These principles advance both the directives of the Guidelines and our case precedent by recognizing the fact-intensive nature of this inquiry and by maximizing the discretion of the trial court in determining the defendant's role in the offense.

## I.

On June 12, 1996, Isabelle Rodriguez De Varon ("De Varon") smuggled 70 heroin-filled pellets into the United States. She had ingested the pellets and smuggled them from Colombia into the United States inside her body. Upon arrival, De Varon reported to United States Customs. Suspecting that she was an internal carrier of narcotics, the customs officials confronted De Varon and she confessed. The government then accompanied De Varon to a hospital and ultimately recovered 512.4 grams of 85 percent pure heroin. At the time of her arrest, De Varon was carrying $2,350. De Varon admitted that a woman identified only as "Nancy" provided her with $1,350 of travel advance money and instructed her to bring an additional $1,000 of her own money to cover her expenses. De Varon said that upon delivery of the drugs in Miami she had expected to receive $6,000.

A federal grand jury returned a two-count indictment against De Varon, charging her with importing heroin into the United States, in violation of 21 U.S.C. § 952(a) and 18 U.S.C. § 2 (Count I), and with possessing heroin with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count II). Pursuant to a plea agreement with the government, De Varon pled guilty to the allegations in Count I and agreed to forfeit the $2,350 she was carrying at the time of her arrest in return for the government agreeing to dismiss Count II. The government also agreed that it would not oppose De Varon's request for a three-level sentence reduction for timely acceptance of responsibility, *see* U.S.S.G. § 3E1.1, or her

application for the "safety valve" protection provided in the Guidelines if she met all of the requirements, *see* U.S.S.G. § 5C1.2.

The district court accepted the plea and ordered a probation officer to prepare a Presentence Investigation Report ("PSI"). The PSI set De Varon's base offense level under the Guidelines at 28. The officer then deducted two levels because De Varon qualified for the "safety valve" provision under U.S.S.G. § 2D1.1(b)(6)[1] and three more levels for De Varon's timely acceptance of responsibility for her conduct under U.S.S.G. § 3E1.1(a), (b)(2). After these adjustments, De Varon's resulting offense level was 23. The probation officer then assigned De Varon a criminal history category of I because she had no prior criminal convictions. The sentencing guideline range for an offense level of 23 with a criminal history of I is 46 to 57 months.

De Varon objected to the PSI's assessment and claimed, *inter alia,* that she should be granted a downward adjustment for her minor role in the offense under U.S.S.G. § 3B1.2. In support of her claim, De

---

[1]Section 2D1.1(b)(6) provides: "If the defendant meets the criteria set forth in subdivisions (1)-(5) of § 5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases) and the offense level determined above is level 26 or greater, decrease by 2 levels." As set forth in § 5C1.2, these five criteria include:

(1)     the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2)     the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3)     the offense did not result in death or serious bodily injury to any person;

(4)     the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848;  and

(5)     not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

3

Varon argued that she was an internal carrier of narcotics and that she was recruited by another, more culpable participant. Specifically, De Varon relied on the oral statement that she had given to the probation officer who prepared her PSI. That statement is recounted in De Varon's PSI as follows:

> [De Varon] reports that she met a lady by the name of Nancy at the office where she works in Colombia. Nancy inquired about moving some items with the trucking company [that employed De Varon]. After several visits to the company, Nancy asked [De Varon] if she possessed a visa. [De Varon] reports that Nancy knew that [De Varon] was having financial problems. [De Varon] reports that her son is mentally retarded and requires medical attention. Nancy asked [De Varon] if she would bring drugs to the United States. [De Varon] was told that she would have to swallow some pills and that [she] would be paid $6,000. [De Varon] relates that she agreed to swallow the drugs because she needed the money for her ill child. [De Varon] states that she knew what she did was wrong and regrets her actions.

At sentencing, De Varon's counsel further said that De Varon was "prepared to testify to that statement before the Court today, if the Court so chooses." De Varon did not present any other information or evidence in support of her claim.

The district court then denied De Varon's request for a minor role reduction, making the following statements:

> Under *Veloza,* the act of transporting ... or importing as a courier does not determine that a defendant is or is not entitled to a[n] adjustment. Secondly, the burden is on the defendant to establish the minor or minimal participation.

> I would say [De Varon's] statement standing alone is not sufficient to establish a minor or minimal level of participation. But even if we were to accept it as true, the fact that she can point to other people that may have provided the narcotics to her would not alter my own determination that she played an integral and essential part in the scheme to import.

> As I have noted in the past, but for individuals willing to perform the role that this defendant played, we would not have the importation being attempted or succeeding in other instances.

> And thirdly, the guidelines refer to a small amount of drugs to entitle a defendant to a reduction. And I would conclude that 512.4 grams of heroin is not a minor amount within the meaning of the guidelines in order to entitle someone to a minor or minimal level role. So I'll note your objection and deny it.

The district court subsequently sentenced De Varon to 46 months of imprisonment, three years of supervised release, and a $100 assessment. The district court also ordered that De Varon be deported as a

4

condition of her supervised release.[2] De Varon appealed her sentence on the ground that the district court erred in failing to reduce her sentence based on her minor role as a heroin courier.

On appeal, a panel of this Court vacated De Varon's sentence and remanded the case to the district court for resentencing. *United States v. De Varon,* 136 F.3d 740 (11th Cir.1998). Following the issuance of the panel's opinion, the government filed a suggestion of rehearing *en banc* with this Court. On May 29, 1998, this Court granted the government's petition, entered an order vacating the panel's decision, and set the case for *en banc* rehearing. *United States v. De Varon,* 141 F.3d 1468 (11th Cir.1998) (en banc).

II.

A.      *Standard of Review*

As an initial matter, we must address the appropriate standard of review to be applied in this case. De Varon argues that this Court reviews a district court's determination whether a defendant qualifies for a minor role adjustment *de novo.* In contrast, the government contends that this determination is a finding of fact subject to review only for clear error.

This Court has long and repeatedly held that a district court's determination of a defendant's role in the offense is a finding of fact to be reviewed only for clear error. We reaffirm that holding today. *See, e.g., United States v. Campbell,* 139 F.3d 820, 821-22 (11th Cir.1998) ("A sentencing court's determination of a defendant's role in an offense is a factual finding reviewed for clear error."); *United States v. Everett,* 129 F.3d 1222, 1224 (11th Cir.1997) (per curiam) ("We consider the district court's determination of appellee's role in the offense a factual finding, and thus review it for clear error."); *United States v. Fernandez,* 92 F.3d 1121, 1123 (11th Cir.1996) (per curiam) (holding that the district court's factual determination of a

---

[2]The district court had no jurisdiction to independently order deportation. After De Varon's sentencing on October 10, 1996, we held in *United States v. Romeo,* 122 F.3d 941, 943-44 (11th Cir.1997), that 8 U.S.C. § 1229a (Supp. III 1997), effective on April 1, 1997, eliminated the jurisdiction of the district courts to independently order deportation as a condition of supervised release. This jurisdictional bar also applies to cases pending on appeal. *See id.* at 944. De Varon, however, does not challenge the district court's order of deportation on appeal.

5

defendant's role in the offense was not clearly erroneous); *United States v. Mosquera,* 95 F.3d 1012, 1014 (11th Cir.1996) (per curiam) ("A sentencing court's determination of the defendant's role as a 'minor' or 'minimal' participant in an offense is also reviewed for clear error."); *United States v. Veloza,* 83 F.3d 380, 381 (11th Cir.1996) (holding that the district court's factual finding that the defendant did not play a minor role in the offense was not clearly erroneous); *United States v. Camargo-Vergara,* 57 F.3d 993, 997 (11th Cir.1995) ("A district court's determination of a defendant's role in an offense is a finding of fact subject to review only for clear error."); *United States v. Costales,* 5 F.3d 480, 483 (11th Cir.1993) (per curiam) ("A district court's determination of a defendant's role in an offense is a finding of fact that we will not disturb unless it is clearly erroneous."); *United States v. Gates,* 967 F.2d 497, 501 (11th Cir.1992) (per curiam) (holding that the district court was not clearly erroneous in refusing to reduce the defendant's offense level for being a minor participant); *United States v. Zaccardi,* 924 F.2d 201, 202-03 (11th Cir.1991) (per curiam) ("The district court's determination that appellant was not a minor participant in the conspiracy is a finding of fact which will be reversed on appeal only if 'clearly erroneous.' "); *United States v. Smith,* 918 F.2d 1551, 1565 (11th Cir.1990) ("[T]he trial judge's determination of whether a defendant is a 'minor' or 'minimal' participant is a factual finding subject to the clearly erroneous standard."); *United States v. Asseff,* 917 F.2d 502, 505 (11th Cir.1990) (per curiam) ("[T]he sentencing court's determination regarding a defendant's role in the offense is a factual finding subject to the clearly erroneous standard."); *United States v. Sellers,* 906 F.2d 597, 605 (11th Cir.1990) ("Our standard of review on this factual issue [the defendant's role in the offense] is whether the district court's decision was 'clearly erroneous.' "); *United States v. Alston,* 895 F.2d 1362, 1369 (11th Cir.1990) ("The requirement in Guideline § 3B1.2 that a judge determine whether the defendant was a 'minor' or 'minimal' participant is a factual determination and therefore subject to the clearly erroneous standard.").[3]

---

[3]This Circuit also applies a clearly erroneous standard to other complex factual inquiries under the Guidelines. For example, we have held that a district court's determination of whether a defendant has played an aggravating role in the offense under U.S.S.G. § 3B1.1 is a finding of fact subject to a clearly

Moreover, every other circuit has adopted the clear error standard to review a district court's determination of a defendant's role in the offense.[4] *See, e.g., United States v. Edwards,* 98 F.3d 1364, 1371 (D.C.Cir.1996) (mixed question); *United States v. Thompson,* 76 F.3d 442, 456-58 (2d Cir.1996) (fact question); *United States v. Lampkins,* 47 F.3d 175, 180 (7th Cir.1995) (question "heavily dependent on the facts"); *United States v. DeFranco,* 30 F.3d 664, 669 (6th Cir.1994) (fact question); *United States v. Carr,* 25 F.3d 1194, 1207 (3d Cir.1994) (mixed question); *United States v. Arredondo-Santos,* 911 F.2d 424, 425 (10th Cir.1990) (fact question); *United States v. Ellis,* 890 F.2d 1040, 1041 (8th Cir.1989) (per curiam) (fact question); *United States v. Sanchez-Lopez,* 879 F.2d 541, 557 (9th Cir.1989) (fact question); *United States v. Daughtrey,* 874 F.2d 213, 218 (4th Cir.1989) (Wilkins, J.) (mixed question); *United States v. Wright,* 873 F.2d 437, 443-44 (1st Cir.1989) (Breyer, J.) (mixed question); *United States v. Franco-Torres,* 869 F.2d 797, 801 (5th Cir.1989) (fact question). While we unquestionably afford deference to a district court's subsidiary factual findings, the ultimate determination of role in the offense is also a fundamentally factual determination entitled to due deference and not a legal conclusion subject to *de novo* review.

Both the Guidelines and the relevant statutory language also explicitly recognize that a district court's determination of a defendant's role in the offense is essentially factual and that such findings must be afforded deference. The commentary to the Guidelines states that the determination of mitigating role in the offense

---

erroneous standard of review. *See, e.g., United States v. Carrillo,* 888 F.2d 117, 118 (11th Cir.1989) (per curiam). Similarly, "[b]ecause the sentencing judge is uniquely positioned to evaluate the defendant's acceptance of responsibility [under U.S.S.G. § 3E1.1]," we have also held that this determination is a factual question entitled to review only for clear error. *United States v. Anderson,* 23 F.3d 368, 369 (11th Cir.1994) (per curiam).

[4]We have consistently held that the district court's determination of the defendant's role in the offense is a finding of fact. Although many other circuits have adopted this view, some have concluded, in contrast, that this determination is a mixed question of fact and law, derived from the application of the Guidelines to the facts of each case. *See, e.g., United States v. Wright,* 873 F.2d 437, 443 (1st Cir.1989) (citing *Pullman-Standard v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)). Whether a fact question or a mixed question, however, every circuit agrees that the proper standard of review is clear error. *See infra* text accompanying note 4.

"is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2, comment. (backg'd.).[5] The statute conferring jurisdiction on this Court to review a district court's sentencing decisions also instructs that appellate courts "shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the Guidelines to the facts." 18 U.S.C. § 3742(e) (1994). Moreover, we believe that the district judge is in the best position to weigh and assess both the defendant's role in her relevant conduct and the relative degrees of culpability of the other participants in that conduct. Intensely factual inquiries such as these are properly consigned to the experienced discretion of the district judge. *See Anderson v. City of Bessemer City,* 470 U.S. 564, 574-75, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (expounding on the meaning of the clearly erroneous standard and recognizing the trial judge's superior position in making credibility determinations and general expertise in fact finding relative to appellate courts); *cf. Koon v. United States,* 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) ("A district court's decision to depart from the Guidelines, by contrast, will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court."). Therefore, in light of these directives and our unambiguous case precedent, we reaffirm our holding that a district court's determination of a defendant's role in the offense is a question of fact to be reviewed under the clearly erroneous standard.

B.      *Mitigating Role in the Offense*

The sentence imposed for a particular offense is based upon the applicable sentencing offense levels set forth in Chapter Two (Offense Conduct) of the Sentencing Guidelines. A sentence adjustment for "the role the defendant played in committing the offense" (either mitigating or aggravating) may also be available. U.S.S.G. Ch. 3, Pt. B, intro. comment. Specifically, a defendant may receive a two to four level reduction

---

[5]*See Stinson v. United States,* 508 U.S. 36, 37, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.").

in her base offense level where her role in the offense can be described as minimal, minor, or somewhere in between. *See* U.S.S.G. § 3B1.2. Minimal participants may receive a four-level reduction, minor participants may receive a two-level reduction, and those whose participation falls in between may receive a three-level reduction. *See* U.S.S.G. § 3B1.2(a), (b). The commentary to the Guidelines instructs that a four-level reduction "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group .... [and their] lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." U.S.S.G. § 3B1.1, comment. (n.1). The application note provides, for example, that a four-level reduction would be appropriate "for someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs." U.S.S.G. § 3B1.2, comment. (n.2). In contrast, a minor role in the offense "means any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n.3).

The proponent of the downward adjustment—here the defendant—always bears the burden of proving a mitigating role in the offense by a preponderance of the evidence. *See Everett,* 129 F.3d at 1224 (citing *Gates,* 967 F.2d at 501); *Camargo-Vergara,* 57 F.3d at 997-98. This principle has been recognized by every circuit. *See, e.g., United States v. Isaza-Zapata,* 148 F.3d 236, 240 (3d Cir.1998); *United States v. Beltran,* 109 F.3d 365, 370 (7th Cir.), *cert. denied,* --- U.S. ----, 118 S.Ct. 145, 139 L.Ed.2d 92 (1997); *United States v. Gonzalez-Soberal,* 109 F.3d 64, 74 (1st Cir.1997); *United States v. Carrazco,* 91 F.3d 65, 67 (8th Cir.1996); *United States v. Atanda,* 60 F.3d 196, 198 (5th Cir.1995) (per curiam); *United States v. Davis,* 36 F.3d 1424, 1436 (9th Cir.1994); *United States v. McCann,* 940 F.2d 1352, 1359 (10th Cir.1991); *United States v. Garcia,* 920 F.2d 153, 156 (2d Cir.1990) (per curiam); *United States v. Perry,* 908 F.2d 56, 58 (6th Cir.1990); *United States v. Gordon,* 895 F.2d 932, 935 (4th Cir.1990); *see also United States v. White,* 1 F.3d 13, 18 (D.C.Cir.1993) ("The defendant 'properly bears the burden of proof under those sections

9

of the Guidelines that define mitigating factors' ....") (quoting *United States v. Burke,* 888 F.2d 862, 869 n. 10 (D.C.Cir.1989)).  It falls to the district court then to evaluate the evidence presented and determine whether this burden has been satisfied.

In making the ultimate determination of the defendant's role in the offense, the sentencing judge has no duty to make any specific subsidiary factual findings.  *See United States v. West,* 898 F.2d 1493, 1503 (11th Cir.1990) ("When the court mandates no departure, the sentencing judge need not offer further reasons justifying the sentence.").  So long as the district court's decision is supported by the record and the court clearly resolves any *disputed* factual issues, a simple statement of the district court's conclusion is sufficient. *See United States v. Wilson,* 884 F.2d 1355, 1356 (11th Cir.1989) ("The findings of fact of the sentencing court may be based on evidence heard during trial, facts admitted by a defendant's plea of guilty, undisputed statements in the presentence report, or evidence presented at the sentencing hearing.");  Fed.R.Crim.P. 32(c)(1) ("For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing.").  Although we have never explicitly addressed this question in the context of § 3B1.2, many other circuits have recognized that a final determination of the defendant's role in the offense is the only specific factual finding that a district court is required to make.  *See, e.g., United States v. Haut,* 107 F.3d 213, 217-18 (3d Cir.) ("We are mindful that '[a] simple statement by the district court' together with some supporting facts of record concerning a defendant's status as a minimal participant is 'typically sufficient to settle the question.' ") (citations omitted), *cert. denied,* --- U.S. ----, 117 S.Ct. 2528, 138 L.Ed.2d 1028 *and* --- U.S. ----, 118 S.Ct. 130, 139 L.Ed.2d 80 (1997);  *United States v. Edwards,* 98 F.3d 1364, 1370 (D.C.Cir.1996) (holding that district court need not "use magic words 'relative culpability' or ... make explicit findings of relative culpability on the record");  *United States v. Davis,* 36 F.3d 1424, 1436 (9th Cir.1994) ("The district court has no duty to make a finding regarding a defendant's relative culpability;  it only needs to make its resolution of disputed matters clear.");  *United States v. Flores-Payon,* 942 F.2d 556, 561 (9th

10

Cir.1991) (holding that district court is not required to make "factual findings of [defendant's] culpability relative to that of his co-defendants"); *United States v. Ocampo,* 937 F.2d 485, 491 (9th Cir.1991) ("A simple statement by the district court that the defendant was not a minor participant is typically sufficient to settle the question."); *United States v. Caruth,* 930 F.2d 811, 816 (10th Cir.1991) (holding that although a statement of reasons for denying a mitigating role adjustment would be helpful, district court " 'is in no way required to make detailed findings, or explain why a particular adjustment is or is not appropriate' ") (citation omitted); *United States v. Gallegos,* 868 F.2d 711, 713 (5th Cir.1989) ("Although we encourage judges to supply more specific factual findings, a simple statement that the defendant was not a 'minor participant' will suffice as a factual finding."). *But see, e.g., United States v. Miranda-Santiago,* 96 F.3d 517, 532 (1st Cir.1996) (holding that district court has obligation to make specific factual findings in support of its denial of adjustment for defendant's mitigating role in the offense); *United States v. Webster,* 996 F.2d 209, 212 (9th Cir.1993) (per curiam) (remanding for factual findings regarding defendant's role and culpability in his relevant conduct); *United States v. Melton,* 930 F.2d 1096, 1099 (5th Cir.1991) (holding that district court must articulate the factual basis upon which it concludes that defendant was not minor participant). Though we "urg[e] district courts to clarify their ultimate factual findings by more specific findings when possible," *West,* 898 F.2d at 1503-04 (quoting *United States v. Mejia-Orosco,* 867 F.2d 216, 221 (5th Cir.1989)), we hold that a district court is not required to make any specific findings other than the ultimate determination of the defendant's role in the offense.

Notwithstanding our deference to the district court's discretion in this uniquely fact-intensive inquiry, the district court's ultimate determination of the defendant's role in the offense should be informed by two principles discerned from the Guidelines: first, the defendant's role in the relevant conduct for which she has been held accountable at sentencing, and, second, her role as compared to that of other participants in her relevant conduct. We address each of these principles in turn.

1.    *Role in the Relevant Conduct*

11

First and foremost, the district court must measure the defendant's role against the relevant conduct for which she has been held accountable. This measurement is compelled by both the Guidelines and our case precedent. The Guidelines provide that the district court should evaluate the defendant's role in the offense "on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct), *i.e.,* all conduct included under § 1B1.3(a)(1)-(4), and not solely on the basis of elements and acts cited in the count of conviction."[6] U.S.S.G. Ch. 3, Pt. B, intro. comment. In other words, the district court must assess whether the defendant is a minor or minimal participant in relation to the relevant conduct attributed to the defendant in calculating her base offense level.

We believe that this principle of symmetry of relevant conduct is analytically sound. One main purpose of the Guidelines is to punish similarly situated defendants in a like-minded way. However, given the relatively broad definition of relevant conduct under § 1B1.3, some defendants may be held accountable

_____

[6]Section 1B1.3(a) specifies that adjustments in chapter 3, *e.g.,* § 3B1.2, shall be determined on the basis of the following relevant conduct:

> (1)   (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;
>
> (2)   solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;
>
> (3)   all harm that resulted from the acts and omission specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and
>
> (4)   any other information specified in the applicable guideline.

12

for conduct that is much broader than their specific acts. A conspiracy conviction is the classic example of this phenomenon. In such cases, a defendant's relevant conduct may be coextensive with the entire conspiracy even though her role in that conspiracy was relatively minor. Under these circumstances, a district court may adjust the defendant's sentence for her mitigating role in this broad criminal conspiracy. This adjustment allows a district court to impose a sentence that more closely mirrors the defendant's actual conduct, furthering the Guidelines' goal of imposing comparable sentences for similar acts. However, such an adjustment only makes sense analytically if the defendant can establish that her role was minor as compared to the relevant conduct *attributed to her.* Otherwise, a defendant could argue that her relevant conduct was narrow for the purpose of calculating base offense level, but was broad for determining her role in the offense. A defendant cannot have it both ways. Application note four illustrates this principle by analogy: "If a defendant has received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his actual criminal conduct, a reduction for a mitigating role under this section ordinarily is not warranted because such defendant is not substantially less culpable than a defendant whose only conduct involved the less serious offense." U.S.S.G. § 3B1.2, comment. (n.4). According to this example, a defendant must prove that she played a minor role in the relevant conduct attributed to her. Where her actual conduct is more serious than her base offense level suggests, a defendant will not be able to meet this burden. Similarly, where the relevant conduct attributed to a defendant is identical to her actual conduct, she cannot prove that she is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which she was a minor participant but for which she was not held accountable.

Recognizing this principle, we have unambiguously held that a defendant's role in the offense may not be determined on the basis of criminal conduct for which the defendant was not held accountable at sentencing. *See United States v. Fernandez,* 92 F.3d 1121, 1123 (11th Cir.1996) (per curiam); *United States v. Holley,* 82 F.3d 1010, 1011-12 (11th Cir.1996) (per curiam). For example, in *Fernandez,* we considered

13

whether a defendant's role in a drug offense was properly determined by reference to the conduct that determined his base offense level or by reference to the greater drug conspiracy which produced that conduct. 92 F.3d at 1123. Squarely rejecting the broader inquiry, we held that "the conspiracy on which a defendant's base offense level is founded is the relevant conspiracy for determining role in the offense." *Id.* We continue to adhere to this principle of symmetry of relevant conduct and acknowledge that several other circuits have adopted this approach. *See, e.g., United States v. James,* 157 F.3d 1218, 1220 (10th Cir.1998) (holding that defendant's role in the offense is determined on the basis of the relevant conduct attributed to him in calculating his base offense level); *United States v. Burnett,* 66 F.3d 137, 140 (7th Cir.1995) (same); *United States v. Atanda,* 60 F.3d 196, 199 (5th Cir.1995) (per curiam) (same); *United States v. Lampkins,* 47 F.3d 175, 180 (7th Cir.1995) (same); *United States v. Gomez,* 31 F.3d 28, 31 (2d Cir.1994) (per curiam) (same); *United States v. Lucht,* 18 F.3d 541, 555-56 (8th Cir.1994) (same); *United States v. Olibrices,* 979 F.2d 1557, 1560 (D.C.Cir.1992) ("To take the larger conspiracy into account only for purposes of making a downward adjustment in the base level would produce the absurd result that a defendant involved both as a minor participant in a larger distribution scheme for which she was not convicted, and as a major participant in a smaller scheme for which she was convicted, would receive a shorter sentence than a defendant involved solely in the smaller scheme."). *But see, e.g., United States v. Isaza-Zapata,* 148 F.3d 236, 240-41 (3d Cir.1998) (relying on this Court's panel opinion in *De Varon* and holding that a court must examine all relevant conduct even if defendant is sentenced only for own acts); *United States v. Ruelas,* 106 F.3d 1416, 1419 (9th Cir.) (recognizing that "[t]he defendant's role in relevant conduct may provide a basis for an adjustment even if that conduct is not used to calculate the defendant's base offense level" but holding that defendant was "not entitled to a reduction in his sentence simply because he was tied to a larger drug trafficking scheme"), *cert. denied,* 520 U.S. 1282, 117 S.Ct. 2470, 138 L.Ed.2d 225 (1997); *United States v. Demers,* 13 F.3d 1381, 1383 (9th Cir.1994) (declining "to restrict the scope of relevant conduct on which

14

a downward adjustment may be based to the relevant conduct that is included in the defendant's base offense level.") (citing *Webster,* 996 F.2d at 211).

Moreover, a defendant's status as a drug courier does not alter the principle that the district court must assess the defendant's role in light of the relevant conduct attributed to her. In *Veloza,* we recognized that courier status in and of itself is not dispositive of whether a defendant is entitled to or precluded from receiving a downward adjustment for role in the offense. 83 F.3d at 382. Simply put, the drug courier may or may not qualify for a minor role reduction. *See, e.g., United States v. Cacho,* 951 F.2d 308, 309-10 (11th Cir.1992) ("Although [defendant] was a courier who carried the drugs into the United States, that fact alone does not establish that she was either a minimal or minor participant in the conspiracy."); *Smith,* 918 F.2d at 1566 ("[A] drug courier is not necessarily a minor or minimal participant within the meaning of the Sentencing Guidelines."). Having posited this unremarkable proposition, however, it is perfectly legitimate for a district court to consider *any* fact related to a defendant's conduct as a courier in an importation scheme, including her status and assigned tasks in that scheme. Indeed, in many drug courier cases these are the *only* discernable facts. Therefore, when a drug courier's relevant conduct is limited to her own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs. This is permissible even though facts related to the defendant's status as a drug courier form the basis for this determination. We do not create a presumption that drug couriers are never minor or minimal participants, any more than that they are always minor or minimal. Rather, we hold only that the district court must assess all of the facts probative of the defendant's role in her relevant conduct in evaluating the defendant's role in the offense.

We further note, in the drug courier context, that the amount of drugs imported is a material consideration in assessing a defendant's role in her relevant conduct. *See Asseff,* 917 F.2d at 507 ("It is evident that [the defendants'] conduct does not warrant a downward adjustment in sentencing because of their apparent knowledge of their criminal activity and the great amount of cocaine involved."); *see also Webster,*

15

996 F.2d at 212 n. 5 (recognizing that "the amount of contraband may be relevant to whether a defendant is a minor participant"). Indeed, because the amount of drugs in a courier's possession—whether very large or very small—may be the best indication of the magnitude of the courier's participation in the criminal enterprise, we do not foreclose the possibility that amount of drugs may be dispositive—in and of itself—in the extreme case. *See, e.g., United States v. Carrazco,* 91 F.3d 65, 67 (8th Cir.1996) (holding that when defendant is "apprehended in possession of a very substantial amount of drugs," that is "a circumstance that tends to suggest that his participation in the criminal enterprise was itself very substantial"); *United States v. Lui,* 941 F.2d 844, 849 (9th Cir.1991) ("[W]e have recognized that possession of a substantial amount of narcotics is grounds for refusing to grant a sentence reduction."); *United States v. Garvey,* 905 F.2d 1144, 1146 (8th Cir.1990) (per curiam) (recognizing that district court may refuse "to grant a minor and/or minimal participant reduction based solely on the significant amount of drugs involved").

Indeed, the Guidelines explicitly recognize that amount of drugs may be determinative in the context of minimal participants. Application note two states that an adjustment for minimal participation "would be appropriate, for example, for someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs." U.S.S.G. § 3B1.2, comment. (n.2). We do not believe that the Guidelines intended to preclude a district court from considering the amount of drugs as a factor in the context of minor participants. Application note three states that "[f]or purposes of § 3B1.2(b), a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n.2). Although this definition seems to suggest that the relevant inquiry for minor participants is solely comparative, we can discern nothing in the Guidelines to suggest that the analysis of role in the offense varies with the level of participation at issue. In fact, the Guidelines instruct just the opposite. The commentary background states that "[t]his section provides a *range* of adjustments for a defendant who plays a part in committing the offense that makes

16

him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, comment. (backg'd.) (emphasis added). The very fact that an intermediate role exists for defendants who fall in between minimal and minor roles, moreover, suggests that the analysis used to measure role in the offense must be uniform. Therefore, we reaffirm that amount of drugs is a relevant factor and recognize that under some circumstances it may be dispositive.

To reiterate, in determining a defendant's role in the offense, a district court must measure the defendant's role against the relevant conduct attributed to her in calculating her base offense level. This methodology is essential to any evaluation of mitigating role. Only if the defendant can establish that she played a relatively minor role in the conduct for which she has already been held accountable—not a minor role in any larger criminal conspiracy—should the district court grant a downward adjustment for minor role in the offense.

2.       *Role as Compared to Other Participants in the Relevant Conduct*

The second principle we derive from the text of the Guidelines is that the district court may also measure the defendant's culpability in comparison to that of other participants in the relevant conduct. We draw this principle from two application notes. Application note one states that minimal participants are those "who are plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2, comment. (n.1). Application note three says that "a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n.3). These definitions clearly contemplate some assessment of relative culpability. However, not all participants may be relevant to this inquiry. First, the district court should look to other participants only to the extent that they are identifiable or discernable from the evidence. This is a fact-intensive inquiry. Second, the district court may consider only those participants who were involved in the relevant conduct attributed to the defendant. The conduct of participants in any larger criminal conspiracy is irrelevant.

17

Relative culpability does not end the inquiry, however. The fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants. In *United States v. Daughtrey,* 874 F.2d 213 (4th Cir.1989), Judge Wilkins gave the following example to illustrate this principle:

> [I]f three individuals had entered a bank with the intent to commit robbery and one stood guard at the door, another sprayed paint on the camera, and the third gathered the money from a teller's cage, no adjustment for Role in the Offense would be warranted. Even if one of the participants deserved an aggravating adjustment because of other acts he committed, the other participants would not be entitled to minimal or minor Role in the Offense adjustments.

*Id.* at 216. We recognized this position in *Zaccardi,* 924 F.2d 201. Zaccardi claimed that he was entitled to a minor role adjustment because the PSI characterized him as the least culpable participant in the conspiracy. *See id.* at 202. We rejected that argument on the ground that it "would require sentencing courts to regard the least culpable member of any conspiracy as a minor participant, regardless of the extent of that member's participation." *Id.* at 203; *see also United States v. Miller,* 159 F.3d 1106, 1111 (7th Cir.1998) ("Though comparative roles are important to determining whether to grant an offense level reduction, they are not determinative."); *United States v. Rotolo,* 950 F.2d 70, 71 (1st Cir.1991) (Breyer, C.J.) (recognizing that "one who, say, points a gun at a bank teller and seizes the money is not entitled to a *downward* adjustment simply because someone else in the gang supervised his activities"). Simply put, a defendant is not automatically entitled to a minor role adjustment merely because she was somewhat less culpable than the other discernable participants. Rather, the district court must determine that the defendant was less culpable than *most other participants* in her relevant conduct.[7]

---

[7]We also recognize that the Guidelines contemplate that the district court measure the defendant's role in the offense against the roles of "average" participants in similar criminal schemes. *See* U.S.S.G. § 3B1.2, comment. (n.4) & (backg'd.). Some courts have explicitly incorporated this form of comparison. *See, e.g., United States v. Ajmal,* 67 F.3d 12, 18 (2d Cir.1995) (holding that defendant only played a minor role in the offense if he was less culpable than his co-conspirators as well as the average participant in such a crime); *United States v. Thomas,* 932 F.2d 1085, 1092 (5th Cir.1991) (holding that defendant was not entitled to minor role adjustment because his role "was greater than the minimal participation exercised by the defendants to whom we have previously allowed a downward adjustment"); *Caruth,* 930 F.2d at 815 ("The Guidelines permit courts not only to compare a defendant's conduct with that of others

In sum, we believe that a district court's determination of a defendant's mitigating role in the offense should be informed by two modes of analysis: First, and most importantly, the district court must measure the defendant's role against the relevant conduct for which she was held accountable at sentencing; we recognize that in many cases this method of analysis will be dispositive. Second, the district court may also measure the defendant's role against the other participants, to the extent that they are discernable, in that relevant conduct.

In making the ultimate finding as to role in the offense, the district court should look to each of these principles and measure the discernable facts against them. In the drug courier context, examples of some relevant factual considerations include: amount of drugs, fair market value of drugs, amount of money to be paid to the courier, equity interest in the drugs, role in planning the criminal scheme, and role in the distribution. This is not an exhaustive list, nor does it suggest that any one factor is more important than another. In the final analysis, this decision falls within the sound discretion of the trial court. Indeed, we acknowledge that a similar fact pattern may on occasion give rise to two reasonable and different constructions. This is inherent in the fact-intensive inquiry specifically contemplated by the Guidelines. As the Supreme Court has recognized, a trial court's choice between "two permissible views of the evidence" is the very essence of the clear error standard of review. *Anderson,* 470 U.S. at 574, 105 S.Ct. 1504. So long as the basis of the trial court's decision is supported by the record *and* does not involve a misapplication of

---

in the same enterprise, but also with the conduct of an average participant in that type of crime."); *Daughtrey,* 874 F.2d at 216 (holding that the court should measure both the relative culpability of each participant in relation to the relevant conduct and the defendant's acts and relative culpability against an objective standard); *Rotolo,* 950 F.2d at 71 (distinguishing between aggravating and mitigating roles and suggesting that "substantially less culpable than the average participant" means an objective comparison between the defendant and an average person engaged in such conduct). This normative analysis advances the Guidelines' goal of like sentences for similarly situated defendants. However, because we are concerned about how a district court will be able to assess factually what level of conduct constitutes that of an "average" participant, we believe that this normative analysis generally should not be dispositive of the district court's role in the offense determination. To the extent the district court does rely on this mode of analysis, we caution that the court must base its conclusions on a sufficient evidential foundation, and make sufficient factual findings to support its assessment of an "average" participant.

19

a rule of law, we believe that it will be rare for an appellate court to conclude that the sentencing court's determination is clearly erroneous.[8]

III.

Applying the aforementioned analysis to the instant case, the district court's determination that De Varon did not play a minor role in the relevant conduct of heroin importation was not clearly erroneous. Again, we review the district court's determination of De Varon's role in the offense only for clear error and we recognize that the district court had considerable discretion in making this fact-intensive determination. Moreover, we do not construe the statements of the district court as propounding a conclusion of law that all couriers are ineluctably precluded from receiving a downward adjustment for their role in the offense. The district court simply stated that De Varon "played an integral and essential part in the scheme to import." We read this statement as reflecting no more than the district court's measurement of De Varon's role against her relevant conduct. As we have discussed, such a finding is suggested by both the Guidelines and our case precedent. Thus, we are satisfied that the court evaluated the particular evidence presented in this case and arrived at a finding of fact that De Varon was not a minor participant in the offense.

The record amply supports the district court's finding that De Varon did not play a minor role in her offense of heroin importation. *See United States v. Suarez,* 939 F.2d 929, 934 (11th Cir.1991) ("When evaluating a district court's reasons for imposing a particular sentence, an appellate court may consider the record from the entire sentencing hearing and need not rely upon the district court's summary statement made at the closing of the sentencing hearing.") (citations omitted). First, De Varon played an important or essential role in her relevant conduct of importing 512.4 grams of 85 percent pure heroin from Colombia into the United States in violation of 21 U.S.C. § 952(a) and 18 U.S.C. § 2. De Varon knowingly and intentionally

---

[8]This is not a case in which a drug courier convicted of importation was granted a role reduction even though the only drugs attributed to her for base offense level purposes were those that she personally brought into this country in or on her person, her personal effects, or her luggage. Accordingly, we have no occasion to decide whether a role reduction could be appropriate in such a case, and leave that issue for another day.

20

entered the United States with the entire amount of drugs in her possession. Although De Varon claims that she did not supply the heroin, we believe that it was within the trial court's discretion to conclude that her participation was central to the importation scheme. Second, De Varon's relevant conduct involved carrying a substantial amount of heroin of high purity. Third, although De Varon was, by one construction of the evidence, arguably less culpable than the only other known participant, Nancy, it is altogether possible on this abbreviated record for the trial court to have concluded that Nancy was no more than a messenger and of relatively equal culpability to De Varon. The facts, as recounted by De Varon, even if fully credited by the trial court, establish no more than that she was hired by someone (Nancy) to smuggle one-half kilogram of heroin into the United States, and to deliver the drugs to someone else—albeit unidentified—in Miami. This bare record does not compel the conclusion that Nancy was sufficiently more culpable than De Varon. At all events, these choices fell within the district court's discretion under U.S.S.G. § 3B1.2. Fourth, De Varon's admission that she furnished $1000 of her own money to finance the smuggling enterprise may likewise be taken as support for the district court's conclusion, notwithstanding De Varon's claim that she became involved in the enterprise because of financial problems.

We reiterate that the burden of establishing a minor role in the offense rests with the proponent. De Varon was free to put on evidence in support of her position, and the district court was free to find, as it plainly did, that De Varon failed to meet this burden. The defendant's suggestion that the district court somehow barred De Varon from testifying at the sentencing hearing is belied by the record. While counsel for De Varon suggested that she was available to testify to the statements she made to the probation officer "if the court so chooses," the district court was not obliged to decide for De Varon whether she should testify. This is an adversarial process, and the decision to testify belongs solely with the defendant and her counsel. *Cf. United States v. Teague,* 953 F.2d 1525, 1533 n. 8 (11th Cir.1992) (en banc) (noting that it is inappropriate for the district court to become involved in defendant's decision whether to take the witness stand).

21

Moreover, the defendant's alternate suggestion that the district court was obligated to investigate and make detailed findings concerning the relative roles of all who may participate in a far-flung narcotics enterprise—that may stretch from the grower, to the manufacturer in a foreign land, through the distribution mechanism, to the final street-level distributor in the United States—is similarly without merit. Again, it misapprehends the defendant's burden of proof; it violates the essential principle that the district court must measure the defendant's role against her relevant conduct, that is, the conduct for which she has been held accountable under U.S.S.G. § 1B1.3; and it imposes an obligation on the trial court that we have explicitly rejected. So long as the district court's conclusion as to defendant's role in the offense is supported by the record, and the court has resolved any disputed factual issues in conformity with Fed.R.Crim.P. 32(c)(1), a simple statement of the district court's conclusion is sufficient.

On the basis of this record and consonant with this Circuit's longstanding view affording substantial deference to the district court, we conclude that the district court's determination that De Varon was not entitled to a downward adjustment for her minor role in the offense was not clearly erroneous. Accordingly, De Varon's sentence must be, and is, AFFIRMED.

CARNES, Circuit Judge, concurring specially:

The Court's opinion does a good job of surveying the law relating to role reductions for drug couriers, employs correct reasoning, and reaches the right result. I join all of the opinion and write separately only to point out the flaws in one part of the dissenting opinion. By focusing on that one part, I do not mean to imply that I agree with the remainder of the dissenting opinion. There are other parts of it with which I disagree, but given the time limitations peculiar to issuance of a decision in this case, I will confine my reply to one issue.

That issue is whether a drug courier, who is convicted of importation and whose base offense level is calculated using only those drugs she personally brings into this country, may ever qualify for a minor role reduction. In other words, if the relevant conduct used to determine a courier's sentence is no broader than

22

her personal importation offense conduct, may she ever be granted a role reduction? The Court does not reach that issue because it is not necessary to decide this case, see Op. at 2527 n.8, but the dissenting opinion does. Speaking only for herself, the dissenting judge asserts that a role reduction is permissible in some circumstances even where a courier is sentenced only for the drugs she brings into this country. I disagree.

Couriers, like De Varon, who are convicted solely of the crime of importing drugs and whose base offense levels reflect only those drugs they personally brought into this country, are not eligible for a role reduction of any kind. It will always be clear error for district courts to grant a courier a role reduction in such circumstances. *See United States v. Lampkins,* 47 F.3d 175, 181 (7th Cir.1995)("it makes no sense to claim that one is a minor participant in one's own conduct"); *United States v. Burnett,* 66 F.3d 137, 140 (7th Cir.1995)("When a courier is held accountable for only the amounts he carries, he plays a significant rather than a minor role in that offense.") (emphasis omitted). This conclusion necessarily follows from the guidelines, from principles recognized in the Court's opinion in this case, and from common sense.

Importation is a simple crime consisting of nothing more than the act of bringing drugs into this country. *See* 21 U.S.C. § 952(a). Once the drugs enter this country from outside, the crime has been committed. Because the act of bringing drugs into this country is the central element of the crime, the courier plays the central role in the crime. She is every bit as important to a drug courier crime as a hit man is to a murder for hire. Others may orchestrate or finance the crimes, furnish weapons or drugs, or profit more from the nefarious undertakings, but the drug courier and the hit man are the ones who actually carry out their respective crimes. Neither is entitled to a role reduction of any kind insofar as the crime they personally commit is concerned.

The guideline and its commentary supports this conclusion. The guideline considers role in the offense and nothing else, beginning "Based on the defendant's role in the offense ..." U.S.S.G. § 3B1.2. It does not concern itself with risk assumed or with whether the defendant herself (as distinguished from the role she

plays) is indispensable to the criminal organization. Role is the sole criterion and it alone defines relative culpability.

The commentary says the four-level minimal role reduction is intended to cover defendants "who are plainly among the least culpable of those involved in the conduct of a group" and whose "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." U.S.S.G. § 3B1.2, comment. (n.1) (Nov.1998). One who actually brings drugs into this country cannot be among the least culpable of those responsible for bringing those particular drugs into this country. Her role in the crime is of equal or greater importance to the role anyone else plays. In addition, because she actually commits the act of importing the drugs, the courier necessarily knows enough about the scope and structure of the crime, which is her act, and about its central participant, whom she is, to rule out any role reduction based on lack of knowledge. When she is an internal carrier, as De Varon was, she is intimately familiar with the scope and structure of the importation crime.

The guidelines commentary advises that a four-level minimal role reduction would be appropriate "in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs." U.S.S.G. § 3B1.2, comment. (n.2) That illustration applies to, and makes sense for, cases in which the relevant criminal conduct that determines the courier's base offense level is a larger multi-courier smuggling enterprise. In other words, the courier could be entitled to a role reduction if her base offense level reflects drugs that she did not personally bring into this country. Her role conceivably could be minimal if the amount of drugs the courier brought in is truly small compared to the total amount brought in by the whole enterprise and attributed to her. But that commentary illustration makes no sense in the context of, and was not intended to apply to, the typical case in which the only drugs attributed to the courier are those she herself brought into this country. In that situation, her role in the relevant conduct which is used to define her base offense level—the actual act of bringing in those particular drugs—cannot be described as minimal.

24

As for the two-level minor role adjustment, the commentary simply says that it is intended for "any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n.3). A courier who commits the essential act that defines the importation crime, like the hit man who commits the actual murder for hire, cannot be less culpable than most other participants in that discrete crime. The situation might be different where the relevant conduct attributed to the courier for purposes of calculating the base offense level is broader than her personal act of bringing drugs into this country, but that is not what we are talking about. What we are talking about are importation cases, like this one, where the relevant conduct is coterminous with the courier's personal act of bringing drugs into this country on or in her body, her luggage, or her personal effects. In this case, as in so many others, the courier was sentenced as though the only drugs she or anyone involved with her had ever imported were those she alone was carrying when arrested. In such circumstances, a role reduction is clearly inappropriate.

The Court's opinion does not address whether a role reduction could ever be appropriate for a courier sentenced for only those drugs she personally brought into this country, see Op. 2527 n.8, but I think the Court's reasoning compels the conclusion I reach. The Court recognizes two controlling principles that district courts should follow in deciding role reduction issues. "First and foremost," its opinion says, the defendant's role must be measured against the relevant conduct for which she has been held accountable in the calculation of her base offense level. *See* Op. at 2522. Where the defendant has been held responsible only for her own conduct, that first and foremost principle will always lead to the conclusion she is not entitled to a role reduction, because a defendant can never be a minor participant in her own conduct. She is the central actor involved in her own conduct, and thus plays the most important role in that conduct, never just a minor role.

The second principle the Court's opinion instructs district courts to follow in deciding role reduction issues is that the defendant's role in the relevant conduct should be compared to that of other participants in

25

the relevant conduct. *See* Op. at 2522, 2526. Again, where the relevant conduct consists of nothing more than the defendant's own transportation of drugs into this country, it is illogical to conclude that she played a less important role than those who did not personally transport those drugs into this country.

The Court's refinement of the second principle to mean that the defendant must have played a role "less culpable than *most other participants* in her relevant conduct," Op. at 2527, solidifies my conclusion. How can most other participants play roles more important to the transportation of drugs into this country than the role played by the transporter? An example the Court borrows from Judge Wilkins of the Fourth Circuit will illustrate my point. That example involves three bank robbers, one of whom serves as a lookout, one of whom sprays paint on the surveillance camera, and one of whom actually takes the money from a teller's cage. *See* Op. at 2527, *quoting United States v. Daughtrey,* 874 F.2d 213, 216-17 (4th Cir.1989). Judge Wilkins concluded that a role reduction would not be appropriate for any of the three, and the Court endorses that conclusion. So do I, and my point is this: Given that a role reduction would be inappropriate in a bank robbery case for one who merely served as a lookout, how could a role reduction ever be appropriate in a drug importation case for the drug courier? If a lookout is not less culpable than most other participants in a bank robbery, then a drug courier certainly is not less culpable than most other participants in a drug importation crime.

The Court says the district court was within its discretion to conclude that De Varon's participation was central to the importation scheme, *see* Op. at 2529; I believe the district court lacked discretion to reach any other conclusion. The Court says the record does not compel the conclusion that Nancy, another participant, was sufficiently more culpable than De Varon, *see* Op. at 2529; I believe the record not only fails to compel that conclusion, but in fact would not permit it, either. The Court concludes that the district court's determination De Varon was not entitled to a downward adjustment for her role in the offense was not clearly erroneous, *see* Op. at 2529; I believe that a contrary determination by the district court would have been clearly erroneous.

26

BARKETT, Circuit Judge, dissenting:

The majority affirms the district court's denial of De Varon's request for a minor role reduction despite the fact that the district court's ruling was predicated on a misapprehension of the applicable legal principles. Moreover, the principles the majority offers as guidance in this area conflict with both the letter and spirit of the Sentencing Guidelines. I therefore respectfully dissent, and would remand this case to the district court for resentencing.

I

In denying the motion for a § 3B1.2 minor role reduction, the district court made the following statements:

> [Firstly, u]nder *Veloza,* the act of transporting ... or importing as a courier does not determine that a defendant is or is not entitled to a[n] adjustment. Secondly, the burden is on the defendant to establish the minor or minimal participation.

> I would say [De Varon's] statement standing alone is not sufficient to establish a minor or minimal level of participation. But even if we were to accept it as true, the fact that she can point to other people that may have provided the narcotics to her *would not alter my own determination that she played an integral and essential part in the scheme to import.*

> *As I have noted in the past, but for individuals willing to perform the role that this defendant played, we would not have the importation being attempted or succeeding in other instances.*

> And thirdly, the guidelines refer to a small amount of drugs to entitle a defendant to a reduction. And I would conclude that 512.4 grams of heroin is not a minor amount within the meaning of the guidelines in order to entitle someone to minor or minimal level role. So, I'll note your objection and deny it.

The district court here begins with a correct statement of the law. *See United States v. Veloza,* 83 F.3d 380, 382 (11th Cir.1996) (holding that "the fact that a courier plays an essential role in an importation scheme does not alone necessarily preclude him from receiving a reduction for a minor role either"). It then goes on to say that "[De Varon's] statement standing alone is not sufficient to establish a minor or minimal level of participation." Because this statement might arguably be read as a credibility determination, had the court stopped there, I would agree with the majority that we should defer to the district court.

27

The court did not, however, stop there. Instead, it went on to state that *no* facts De Varon might put forward to support her request for a minor role reduction would have been sufficient to "alter [the court's] own determination that she played an integral and essential part in the scheme to import, ... [because] but for individuals willing to perform the role that this defendant played, we would not have the importation being attempted or succeeding in other instances." It is difficult to read these words as anything but a statement that, in the district court's view, no one whose participation in a drug importation scheme consists solely of carrying drugs across the border would be entitled to a § 3B1.2 minor role reduction. As the majority concedes, this view is an incorrect statement of the law. Accordingly, I would remand and direct the district court to make the credibility findings necessary to determine the facts and to evaluate those facts according to the correct legal standard.

II

In applying the law to the facts to determine whether a § 3B1.2 minor role reduction is warranted, a district court should be guided by the spirit and the letter of the Sentencing Guidelines. The "guidance" offered by the majority in this regard is not supported by either, and in fact, conflicts with both.

The majority offers two "principles" which should guide the inquiry: "first, the defendant's role in the relevant conduct for which she has been held accountable at sentencing, and second, her role as compared to that of other participants in her relevant conduct." *United States v. De Varon,* at 2521 - 22. As the Guidelines make clear, a defendant's "relevant conduct" for purposes of § 3B1.2 includes not just the defendant's *own* acts but also, in the case of jointly undertaken criminal activity, the acts of any other participants[1] in the offense of conviction taken "during the commission of the offense of conviction, [or] in preparation for that offense," whether or not the case is charged as a conspiracy. U.S. Sentencing Guidelines Manual [hereinafter U.S.S.G.] § 1B1.3(a)(1); *see also* U.S.S.G. Ch. 3, Pt. B, intro. comment. ("The

---

[1]*See* U.S.S.G. § 3B1.1 comment. (n.1) ("A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted.").

28

determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct) ... and not solely on the basis of elements and acts cited in the count of conviction.").[2]

This broad understanding of a defendant's "relevant conduct" as expressed in the Guidelines reflects an awareness of two factors of significance here:  (1) many criminal endeavors, even those not charged as conspiracies, are joint undertakings involving several participants;  and (2) different levels of culpability may be appropriately ascribed to participants in a joint criminal enterprise when those participants perform different tasks in furtherance of the crime charged.  *See, e.g.,* U.S.S.G. § 3B1.2, comment. (n.3) (defining a "minor participant" as "any participant who is less culpable than most other participants, but whose role could not be described as minimal").

Perhaps no crime illustrates these considerations as effectively as that of importing narcotics through the use of swallowers like De Varon.  It is of course true that the completion of this crime requires the participation of a courier, but the actions of a courier are hardly the only components of the crime.  Rather, several other significant tasks must be undertaken to complete even the simple crime of importation.  Someone must, for example, formulate the plan, recruit the participants, coordinate their actions, locate suppliers, procure the drugs, purchase the tickets, arrange for a drop-off on the other side, and finance the whole venture.  All of these activities, which may or may not involve only one person, constitute "relevant

---

[2]Section 1B1.3(a) defines "relevant conduct" for purposes of the Guidelines as:

> (1)  (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant;  and
>
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense....

29

conduct" with respect to the crime of importation, "whether or not charged as a conspiracy." U.S.S.G. § 1B1.3 comment. (n.2).

The task of district courts in cases like De Varon's is therefore to determine the relative culpability of the courier as compared to those other participants, if any, who performed the additional tasks necessary to the importation scheme. In a given case, the same person may be found to have performed all the many tasks necessary to complete the crime of drug importation—the masterminding, financing, recruiting, coordinating, procuring, etc. In such a case, that person would plainly not be entitled to a § 3B1.2 role reduction as a minor participant. In other cases, however, the tasks necessary to carry out the crime of importing narcotics will be undertaken by several different participants. Here, if the court finds the defendant "less culpable than most other participants" although her "role could not be described as minimal," it must likewise conclude that a § 3B1.2 minor role reduction is appropriate. U.S.S.G. § 3B1.2 comment. (n.3). Indeed, it is precisely for such cases that § 3B1.2 was intended.

In this case, the district court reasoned that but for the acts of couriers like De Varon there would be no crime of importation, thus essentially rejecting the suggestion that a courier could ever be a minor participant in this crime. Yet this "but for" analysis could be applied to most criminal acts prosecuted, treating all those defendants performing acts necessary to accomplish the crime as equally culpable. The Guidelines, however, reject this categorical approach and instead support the principle of relative culpability by enhancing the punishment for those with greater responsibility in the criminal enterprise and reducing the punishment for those less culpable. Specifically, the commentary to § 3B1.1 identifies characteristics which would make a participant "integral and essential"[3] to the enterprise and therefore more culpable,

> includ[ing] the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the

---

[3]Whether or not other people were involved and regardless of the role they played, the district court in this case held that these considerations "would not alter my own determination that she played an integral and essential part in the scheme to import."

30

crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 comment. (n.4); *see also* U.S.S.G. § 3B1.1 comment. (backg'd) ("This [upward] adjustment [for organizers, leaders, managers, or supervisors] is included primarily because of concerns about relative responsibility."). These same factors also help distinguish those individuals who play only a minor role in the criminal activity from the leaders and other mid-level criminal actors, clearly indicating the Sentencing Commission's view that foot soldiers who actually carry out the crime are less culpable than the "organizer[s], leader[s], manager[s] or supervisor[s]." U.S.S.G. § 3B1.1 comment. (n.2). Under the facts of a given case, a foot soldier may well not receive a § 3B1.2 reduction, but it is wrong to assume that by virtue of his or her participation he or she is automatically to be considered "integral or essential" to the crime.

It is important to recognize what this Guidelines scheme does *not* entail. The majority fears that a defendant could "argue that her relevant conduct was narrow for the purpose of calculating base offense level, but was broad for determining her role in the offense." *De Varon,* at 2522. I agree with the majority that our opinion in *United States v. Fernandez,* 92 F.3d 1121 (11th Cir.1996), in which we reject the defendant's suggestion that his role in the offense could be determined on the basis of an *uncharged conspiracy,* forecloses such an argument. However, under the definition of "relevant conduct" established in the Guidelines, a defendant whose *charged crime* required the performance of several different tasks and whose own actions toward the common goal were minor in relation to the other participants could well be found to be *a minor participant in the conduct on which her base offense level was calculated.* This is directly acknowledged in the Guidelines, which broadly defines an individual defendant's "relevant conduct" for purposes of establishing the base offense level to include "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). *See also* U.S.S.G. § 1B1.3 comment. (n.2) (defining a "jointly undertaken criminal activity" as a criminal plan "undertaken by the defendant in concert with others, whether or not charged as a conspiracy").

31

It is for this reason that a majority of the circuits to have addressed this question have interpreted the Guidelines as I do here.[4] *See, e.g., United States v. Isaza-Zapata,* 148 F.3d 236, 240 (3d Cir.1998) ("The scope of the relevant conduct that a court should consider [in a § 3B1.2 motion] is broader than merely the conduct required by the elements of the offense of conviction. Even if a courier is charged with importing only the quantity of drugs that he actually carried, there may still be other participants involved in the conduct *relevant to that small amount or that one transaction.*") (citing *United States v. Rodriguez De Varon,* 136 F.3d 740, 745 (11th Cir.1998) (emphasis added)); *United States v. Snoddy,* 139 F.3d 1224, 1228 (8th Cir.1998) (" 'Whether a downward adjustment is warranted is determined not only by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable, but also by measuring each participant's individual acts and relative culpability against the elements of the offense.' ") (quoting *United States v. Padilla-Pena,* 129 F.3d 457, 471 (8th Cir.1997)); *United States v. Caballero,* 936 F.2d 1292, 1298 (D.C.Cir.1991) (concluding "that section 3B1 allows the sentencing judge to look to 'the contours of the underlying scheme itself rather than the mere elements of the offense charged' ") (quoting *United States v. Rodriguez,* 925 F.2d 107, 111 (5th Cir.1991)).

The Seventh Circuit is an exception. In *United States v. Lampkins,* 47 F.3d 175 (7th Cir.1995), the court, noting that the defendant "was sentenced only for drugs that he himself handled," concluded that "it makes no sense to claim that one is a minor participant in one's own conduct." *Lampkins,* 47 F.3d at 181. And in *United States v. Burnett,* 66 F.3d 137 (7th Cir.1995), although conceding that the defendant was "a small cog in the scheme," the Seventh Circuit held that "[w]hen a courier is held accountable for only the amounts he carries, he plays a significant rather than a minor role in that offense." *Id.* at 140; *see also id.* ("Couriers are integral to the success of drug rings...."). As noted previously herein, however, this position

---

[4]At least one circuit has interpreted them more broadly still. *See United States v. Demers,* 13 F.3d 1381, 1383 (9th Cir.1994) (declining, on consideration of the 1990 Amendment, "to restrict the scope of relevant conduct on which a downward adjustment may be based to the relevant conduct that is included in the defendant's base offense level").

ignores the plain directive of the Guidelines. Declaring that one cannot be a "minor participant in one's own conduct," *Lampkins,* 47 F.3d at 181, overlooks the fact that for purposes of § 3B1.2, the "relevant conduct" a court must consider in an importation scheme may include much more than the lone acts of the actual courier. *See De Varon,* 136 F.3d at 745; *see also Isaza-Zapata,* 148 F.3d at 240 (" We disagree with *Burnett.* The district court must examine all relevant conduct, not merely the defendant's, in assessing his relative culpability.").

Therefore, it seems clear that, under the Guidelines, if a drug courier is found to have acted in concert with others, his or her acts in furtherance of the charged conduct are to be measured against the acts of those others, regardless of whether the offense was charged as a conspiracy or a simple count of importation.

### III

I am also troubled by the suggestion that *in and of itself* the amount of drugs attributed to a defendant has any bearing on whether that defendant is entitled to a minor role reduction. The amount involved may be taken into account, but always as part of the inquiry into relative culpability. The majority asserts that "the amount of drugs in a courier's possession ... may be the best indication of the magnitude of the courier's participation in the criminal enterprise." *De Varon,* at 2524. This may or may not be the case, however, depending on how the amount informs the evidence, viewed in light of § 3B1.2's emphasis on the relative culpability of the defendant to be sentenced.[5] *See* U.S.S.G. § 3B1.2 comment. (backg'd) ("This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant."). The majority does not explain how it is that the culpability of a drug courier *as compared with "most other participants"* in the offense, U.S.S.G. § 3B1.2

[5]The majority acknowledges that the language of § 3B1.2 and its accompanying notes "seems to suggest that the relevant inquiry for minor participants is solely comparative," but nonetheless claims it "can discern nothing in the Guidelines to suggest that the analysis of role in the offense varies with the level of participation at issue." *De Varon,* at 2525. Given that § 3B1 was designed for the sole purpose of enhancing the sentences of those participants with a relatively higher level of participation in the offense, *see* U.S.S.G. § 3B1.1, and reducing the sentences of those with a relatively lower level of participation, *see* U.S.S.G. § 3B1.2, I find this statement somewhat puzzling.

comment. (n.3) (emphasis added), would be affected by the amount of drugs with which she was caught. Whatever amount the courier sought to smuggle will be the same amount that defines the offense, and the same amount that must therefore be attributed to the other participants in the scheme. De Varon, for example, was convicted of importing 512.4 grams of eighty-five percent pure heroin. This is the same amount given to her by "Nancy" and organized by Nancy or others for her to carry. The amount, in other words, remains constant throughout the court's assessment of De Varon's role in the relevant conduct relative to the other participants in the offense. For this reason, when assessing the relative culpability of the participants—the guiding consideration for courts considering requests for minor role reductions—the amount of drugs may well be beside the point.

The illustrations found in the commentary to § 3B1.2, offered by the majority as support for its conclusion that the amount of drugs "may be dispositive," *De Varon,* at 2525, in fact support a contrary conclusion. As the majority points out, the notes accompanying § 3B1.2 explain that a "minimal participant" adjustment "would be appropriate, for example, for someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs." U.S.S.G. § 3B1.2, comment. (n.2). If the latter example were the only one provided, I would agree that amount would play a larger role in the inquiry. In the first example, however, the defendant has helped "a very large drug smuggling operation ... to offload part of a single marihuana shipment." The notes do not tell us what constitutes "part" of a drug shipment, but common sense tells us that "a very large drug smuggling operation" is likely to involve large shipments of drugs. "Part" of one shipment is thus likely to be comprised of as great a quantity as one person could carry in several trips from ship to shore—considerably more, that is, than 512.4 grams. Yet such a person is still entitled to a 4-level reduction as a "*minimal* participant." One must therefore analyze both examples and attempt to harmonize them.

The emphasis of § 3B1.2 on relative culpability—the heart of § 3B1—helps to do so. Under § 3B1.2, the minimal participant reduction

> is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.

U.S.S.G. § 3B1.2 comment. (n.1). In light of this language, one cannot construe the illustrations that follow to mean that amount is the sole determinative factor, to be considered in isolation from the relative culpability of all the participants. If, as the majority claims, the amount of drugs were "determinative in the context of minimal participants," the offloader, who may well have shouldered several hundred kilos during his short time at the dock, should be considerably less likely to get the reduction than the courier caught with a "small amount of drugs." But the offloader as well as the courier gets the reduction, because it is relative culpability and not drug quantity that drives the analysis.

Neither the letter nor the spirit of § 3B1.2 supports the suggestion that amount alone, regardless of other contextual considerations, is a sufficient basis on which to deny a courier a § 3B1.2 reduction. Although the language of the Guidelines suggests that a courier with a large amount of drugs is not entitled to a 4-level minimal participant reduction, he or she may still be eligible for a 2-level minor role reduction if he or she is a "participant who is less culpable than most other participants, ... whose role could not be described as minimal." U.S.S.G. § 3B1.2 comment (n.3).

IV

Finally, I must also dissent from the reasoning used by the majority to uphold the district court's conclusion that De Varon was not entitled to a minor role reduction. First, the district court made no credibility determination regarding De Varon's testimony, and we are in no position to do so here. The most generous interpretation of the district court's ruling on this record is that it provided no indication as to the court's view of the defendant's credibility. For this reason alone, the case should be remanded to the district

35

court for a ruling on the credibility of the defendant and a finding as to whether or not she played a minor role in the offense.

Moreover, assuming that there was such a "finding," which I believe the record refutes, I cannot agree with the majority's analysis concluding that the record in this case "amply supports the district court's finding that De Varon did not play a minor role in her offense of heroin importation." *De Varon,* at 2528. The majority explains that

> although De Varon was, by one construction of the evidence, arguably less culpable than the only other known participant, Nancy, it is altogether possible on this abbreviated record for the trial court to have concluded that Nancy was no more than a messenger and of relatively equal culpability to De Varon. The facts, as recounted by De Varon, even if fully credited by the trial court, establish no more than that she was hired by someone (Nancy) to smuggle one-half kilogram of heroin into the United States, and to deliver the drugs to someone else—albeit unidentified—in Miami. This bare record does not compel the conclusion that Nancy was sufficiently more culpable than De Varon.

*Id* .

I find this logic flawed. According to De Varon's testimony, if De Varon were to be believed, we know that someone else—maybe Nancy,[6] maybe one or more other participants—masterminded and financed the operation, called the shots, recruited and coordinated the several players, procured the drugs, bought the tickets, and arranged for a drop-off in Miami. In light of this knowledge, De Varon's inability to provide the names of the other participants should not be allowed to render her ineligible for a minor role reduction.[7] Yet rather than assessing De Varon's role in the offense in light of all the relevant conduct suggested by both the

---

[6]If "Nancy was no more than a messenger and of relatively equal culpability as De Varon," this may only go to show merely that both Nancy *and* De Varon were minor participants in the relevant conduct.

[7]Of course, it is not enough that the defendant is less culpable than some of the other participants. Rather, he or she must show that he or she is less culpable than "most other participants." U.S.S.G. § 3B1.2 comment. (n.3).

law and common sense, the majority implicitly crafts a rule to the effect that, for purposes of § 3B1.2, an unnamed participant to the crime is no participant at all.[8]

The majority's implicit requirement that a defendant must provide the names of all the participants to the crime has the paradoxical and troubling effect of rendering defendants with little inside knowledge or understanding of the larger scheme less likely to receive a minor participant reduction, while allowing those defendants with sufficient knowledge to name all the players and the tasks performed by each to widen the range of participants against whose actions theirs will be judged, thus making them more likely to receive the reduction. Yet as the Guidelines explicitly recognize, a "defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." U.S.S.G. § 3B1.2 comment. (n.1). This is not to say that where the concerted criminal act involves a single leader and many actors with small roles, the minor players would necessarily be entitled to reductions as "less culpable than most other participants." U.S.S.G. § 3B1.2 comment (n.3). At the same time, however, minimal knowledge of the larger scheme should not automatically defeat the very defendants who might be most entitled to a § 3B1.2 reduction.

Either a witness who professes to possess limited information about the larger scheme is telling the truth, or she is not. If the judge finds it to be the latter, the judge is free to deny the reduction. But if the judge finds the witness credible and the testimony consistent, the judge may on the basis of the testimony alone determine that the defendant is entitled to a reduction. The judge would, in that instance, consider all of those factors which we know to impact upon the concept of relative culpability, including the defendant's level of education and sophistication, prior involvement in criminal activity, and manner of involvement in the concerted criminal activity relative to other participants.

---

[8]*See* U.S.S.G. § 3B1.1 comment. (n.1) (defining "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted").

With regard to the manner in which De Varon participated in the crime at issue, I am troubled by the complete exclusion from the majority's discussion of any consideration of what, exactly, De Varon *did,* and what is done by an unfortunately high number of the men and women apprehended as drug smugglers at our nation's borders. She swallowed and carried in her intestinal tract 512.4 grams of eighty-five percent pure heroin, risking not just an extended stay in an American prison, but her very life.[9] This is not a reason that De Varon should not be held responsible for the act she undertook. But the Guidelines direct courts to determine a defendant's relative culpability, and no one can debate the position of a courier like De Varon in the hierarchy of the criminal enterprise. If De Varon was part of a larger enterprise, it is clear that, as a swallower, she was considered by definition as expendable to that organization, for no organization, illicit or otherwise, would risk the lives of its central or valuable members in this way. The fact that De Varon filled the role of swallower in the importation scheme cannot be totally ignored in considering whether she was a minor player.

For all the foregoing reasons, I would reverse the district court's denial of De Varon's request for a § 3B1.2 minor participant reduction, and remand for the court to consider whether De Varon met her burden of demonstrating that she was less culpable than most other participants in the offense.

---

[9]*See United States v. Purchess,* 107 F.3d 1261, 1263-64, 1270-71 (7th Cir.1997) (affirming a § 5K2.1 upward departure for conduct resulting in death, where the defendant was convicted of organizing the importation of drugs through the use of swallowers and one of his couriers died en route of "body packer syndrome" after a "deadly amount of cocaine [ ] leaked from the [ingested drug-filled] pellets"); *Huguez v. United States,* 406 F.2d 366, 391 (9th Cir.1968) (explaining that "the acidic nature of the gastric juices in the [stomach] makes the swallowing of almost any flexible container of narcotics quite dangerous") (citing *Blefare v. United States,* 362 F.2d 870, 873-874 (9th Cir.1966)).