[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 20, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-10993
Non-Argument Calendar

_____

D. C. Docket No. 05-10019-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GIOVANNY ESTUARDO COTERA VALDEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(October 20, 2006)**

Before BIRCH, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Giovanny Estuardo Cotera Valdez appeals his 135-month sentence, which was imposed after he pled guilty to one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine while on a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. App. § 1903(j). On appeal, he argues that the district court erred by denying his motion for a minor-role reduction, pursuant to U.S.S.G. § 3B1.2(b). The district court denied the motion for two reasons: (1) it was untimely, and (2) Valdez did not demonstrate that he was substantially less culpable than similarly situated individuals. After careful review, we affirm.

We review for an abuse of discretion whether the district court erred in determining that a motion was untimely. See Clark v. Housing Authority of City of Alma, 971 F.2d 723, 724 (11th Cir. 1992) (reviewing the timeliness of the filing of a request for attorney's fees for an abuse of discretion); see also United States v. Jones, 70 F.3d 1009, 1010 (8th Cir. 1995) (finding no abuse of discretion in district court's decision not to consider an untimely objection to the PSI); United States v. Morsley, 64 F.3d 907, 914 (4th Cir. 1995) (holding that district court had discretion to refuse to rule on untimely objections to PSI).

We review a district court's factual findings regarding a defendant's role in the offense for clear error. United States v. De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). "So long as the basis of the trial court's decision is supported by

2

the record <u>and</u> does not involve a misapplication of a rule of law, we believe that it will be rare for an appellate court to conclude that the sentencing court's determination is clearly erroneous." <u>De Varon</u>, 175 F.3d at 945.

The relevant facts are these. On July 26, 2005, Valdez and several others were indicted with: (1) conspiracy to possess with intent to distribute five kilograms of cocaine while on a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. App. § 1903(a) and 21 U.S.C. § 960(b)(1)(B) (Count One); and (2) possession with intent to distribute a controlled substance, in violation of 46 U.S.C. App. § 1903(a), 21 U.S.C. § 960(b)(1)(B), and 18 U.S.C. § 2 (Count Two). Pursuant to a written plea agreement, Valdez pled guilty to Count One and the government agreed to dismiss Count Two. The plea agreement provided that the court could impose a sentence up to the statutory maximum term authorized by law, which was life imprisonment. It also explained that the statutory mandatory minimum sentence was 120 months' imprisonment. The government agreed to recommend at sentencing a two-level adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, and, if Valdez's offense level was greater than 16, an additional one-level decrease under U.S.S.G. § 3E1.1(B), based upon his timely notification of his intent to plead guilty. The government also provided that it would file a "safety valve" motion under U.S.S.G.

§ 5C1.2, and a motion for a downward departure under U.S.S.G. § 5K1.1 or Fed. R. Crim. P. 35, if certain conditions were met as to each.

At the plea colloquy, Valdez verified that he understood that the court was authorized to sentence him to the maximum term authorized by law, or a maximum of life imprisonment. The government then proffered that if the case went to trial, it would show that Valdez was found in international waters on a cargo vessel named the D'Mary. After intercepting and detaining the vessel, U.S. Coast Guard personnel searched the D'Mary and found 2,054 kilograms of cocaine on board. Valdez agreed that the proffer was correct and proceeded to sentencing.

According to the presentence investigation report ("PSI"), there were eight crew members, in addition to Valdez, onboard the D'Mary when it was detained. Valdez was the "second engineer," and the other individuals were identified as the captain, the first mate, the chief engineer, the first engineer, three "able-bodied seamen," and the cook. According to the PSI, 1,896 kilograms of cocaine was found on board. All but one of the crew members made post-arrest statements. One crew member, David Antonio Godoy Realpe, stated that all of the crew members had been paid $1,000 to work on the ship, and that all of the crew members -- except the captain and a mechanic -- loaded the cocaine onto the D'Mary and then broke it into smaller packages and hid it on the ship. In his post-arrest statement, Valdez stated that he was a mechanic on the ship while it was

4

docked, and was then hired as a second engineer for $500 per month. He stated that he did not know that there was cocaine on board. Another crew member, Carlos Enrique Ortega Bone, who was identified as the chief engineer, stated in his post-arrest statement that he was intoxicated when the cocaine was being loaded, and, therefore, did not participate in the loading though he was aware the vessel was being used to transport cocaine. Three other crew members, all of whom were identified as "able-bodied seamen," denied knowledge of the cocaine's presence.

The PSI recommended that none of the crew members were entitled to a mitigating role adjustment because they "were equally culpable as crewmembers aboard the vessel and they were directed by Cacho Casanova. They all participated in the loading of the cocaine, except for Ortega Bone, who was drunk." The PSI also noted that Casanova received an upward adjustment for his role as captain.

The PSI set Valdez's base offense level at 38, based upon possession of 1,896 kilograms of cocaine, pursuant to U.S.S.G. § 2D1.1(a)(3), and recommended the following adjustments: (1) a two-level "safety valve" reduction under U.S.S.G. §§ 2D1.1(b), 5C1.2(a); and (2) a three-level decrease for acceptance of responsibility under U.S.S.G. § 3E1.1(a). With an adjusted offense level of 33 and a criminal history category I, Valdez faced a Guidelines range of 188 to 235 months' imprisonment. Valdez filed no written objections, relevant to this appeal, to the PSI. However, at the sentencing hearing, he argued for the first time that he

should have received a minor-role reduction.  The district court denied the request after Valdez admitted that he failed to file a timely motion to that end.  But the court went on to note the following:

> So, on that basis alone [the untimeliness], it would be denied, but addressing the merits and consistent with the prior ruling with the other defendant, I will adopt the probation officer's assessment as to the relative culpability of each of the defendants in this case paragraph 45 and find that he does not qualify for a role adjustment.

After Valdez apologized for his crime, the court stated that it had considered the statements of the parties, the PSI, the advisory guidelines, and the factors set forth in 18 U.S.C. § 3553(a), and determined that a low-end sentence was appropriate.  The court the imposed a 135-month term of imprisonment, followed by 5 years' supervised release.  This appeal followed.

We first address the district court's untimeliness ruling.  Rule 88.8(6) of the Local Rules of the United States District Court for the Southern District of Florida requires that motions for departure be filed no later than 5 days prior to the sentencing proceeding.  S.D. Fla. L.R. 88.8(6).  We have found no error in a district court's rejection of a defendant's motion for a downward departure on the basis that it was untimely under Local Rule 88.8(6), where the motion was filed beyond the 5-day limitation.  See United States v. Quintana, 300 F.3d 1227, 1229-30 (11th Cir. 2000).  In the present case, it is undisputed that Valdez failed to move

6

for a minor role reduction prior to the sentencing hearing, and, in fact, admitted to this fact at the hearing. Therefore, the district court's determination that the motion was due to be denied as untimely was not an abuse of discretion. See Quintana, 300 F.3d at 1229-30. On this basis alone, we could affirm the district court's decision. However, because it is clear that the district court's decision on the merits of Valdez's motion also was plainly correct, we address this alternative ground as well.

The Guidelines provide for a two-level decrease where the defendant was a minor participant in any criminal activity. See U.S.S.G. § 3B1.2(b). A minor participant is defined as "any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n.3). To determine whether the adjustment applies, a district court first should measure the defendant's role against the conduct for which he has been held accountable. See De Varon, 175 F.3d at 934. Second, where there is sufficient evidence, a court also may measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant. See id. In making this inquiry, a district court should look to other participants only to the extent that they (1) are identifiable or discernable from the evidence, and (2) were involved in the relevant conduct attributed to the defendant. See id. at 944 (stating that "[t]he conduct of participants in any larger criminal conspiracy is irrelevant"). A

7

defendant whose role in the relevant conduct was less than that of other participants is not necessarily entitled to a minor role reduction where no participants are minor participants. Id.

Here, the relevant conduct attributed to Valdez at sentencing was the possession of 1,896 kilograms of cocaine, which represented the amount of cocaine found on the vessel when it was intercepted with Valdez onboard. Indeed, Valdez admitted at his plea colloquy that he was found on a vessel with 2,054 kilograms. Moreover, according to fellow crewmembers' post-arrest statements, Valdez and the others assisted in loading the cocaine and then breaking it up and distributing it on the boat. These activities demonstrate that he participated in transporting the drugs, and that his role was not minor in the relevant conduct of possession and conspiracy to possess with intent to distribute five kilograms or more of cocaine. See De Varon, 175 F.3d at 944. Therefore, the first principle of De Varon precludes a minor role reduction.[1]

_____

[1] Given Valdez's failure to carry his burden on the first prong, we need not reach the second De Varon prong, but we nevertheless observe that this second principle would also defeat the award of a minor-role reduction here. The only participants who may be considered are those involved in the relevant conduct attributed to Valdez, specifically, the other crewmembers. See id. With the possible exception of the boat's captain, Valdez's conduct appears to have been equal to that of the other crew members and the conduct of others who were involved in the overall scheme of transporting and selling cocaine -- the organizers or recruiters or those with an equity interest in the cocaine -- is irrelevant to the assessment of Valdez's role, as he is not charged with a larger conspiracy to import or distribute drugs, and, in any event, these individuals are not identifiable from the evidence. See DeVaron, 175 F.3d at 944.

"So long as the basis of the trial court's decision is supported by the record and does not involve a misapplication of a rule of law, we believe that it will be rare for an appellate court to conclude that the sentencing court's determination is clearly erroneous." Id. at 945 (emphasis in original). Here, we cannot find clear error in the district court's conclusion that Valdez played an integral role in the charged offenses and, accordingly, was not entitled to a minor-role reduction, pursuant to our decision in De Varon.

**AFFIRMED.**