[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 7, 2007
THOMAS K. KAHN
CLERK

No. 06-16182
Non-Argument Calendar

_____

D. C. Docket No. 06-00055-CR-T-17-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FREDY ANTONIO PANESSO-MURILLO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(September 7, 2007)**

Before ANDERSON, BARKETT and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, Fredy Antonio Panesso-Murillo appeals his 135-

month sentence for conspiracy to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. app. § 1903(a), (g), (j) (repealed 2006), and 21 U.S.C. § 960(b)(1)(B)(ii); and possession with intent to distribute five kilograms or more of cocaine, in violation of 46 U.S.C. app. § 1903(g) (repealed 2006), 18 U.S.C. § 2, and 21 U.S.C. § 960(b)(1)(B)(ii). After review, we affirm.

## I. BACKGROUND

While on routine counter-drug patrol with the United States Coast Guard ("USCG"), a British Navy vessel detected a Panamanian-flagged vessel as a possible target of interest. The USCG boarded the vessel and seized a total of 118 bales of cocaine (3,393.4 kilograms of cocaine). Five crew members were found on board, including the captain, two seamen, a motorman and defendant Panesso-Murillo, who was the chief engineer.

At his change-of-plea hearing, Panesso-Murillo acknowledged that while working on board the vessel headed for Mexico, the captain told him that they were going to pick up cocaine. Panesso-Murillo agreed to be paid $60,000 for his participation in the plan. During the hearing, the government noted that two other individuals found on the vessel were not arrested. One of these individuals was not involved in the conspiracy to distribute drugs and the other was providing

2

information to law enforcement.

The Presentence Investigation Report ("PSI") held Panesso-Murillo accountable for 3,393.4 kilograms of cocaine and assigned a base offense level of 38 pursuant to U.S.S.G. § 2D1.1(c)(1). The PSI reduced Panesso-Murillo's offense level by two levels, pursuant to U.S.S.G. § 2D1.1(b)(9), because Panesso-Murillo met the safety-valve criteria, and by three levels, pursuant to U.S.S.G. § 3E1.1(a) and (b), for acceptance of responsibility. With a total offense level of 33 and a criminal history category of I, the PSI recommended an advisory guidelines range of 135 to 168 months' imprisonment.

Panesso-Murillo objected to the PSI because, inter alia, it did not recommend a minor-role reduction. The district court overruled his objection, stating that Panesso-Murillo was not any less culpable than any of the other participants in the conspiracy, other than the captain who received a role enhancement.

Panesso-Murillo argued for a below-advisory guidelines range sentence of 97 months' imprisonment. In support, Panesso-Murillo pointed out that he had a ninth grade education, had no history of drug importation and had taught himself how to be a mechanic. In response to Panesso-Murillo's argument that he had never done anything like the instant offense, the district court stated that Panesso-

3

Murillo was better educated than most of the defendants that came before the court and that Panesso-Murillo "should have known better." When Panesso-Murillo argued that the need for deterrence was lessened because Panesso-Murillo would be subject to deportation following his sentence, the district court responded that Panesso-Murillo's sentence could possibly deter future crew members from engaging in similar conduct.

Before hearing from Panesso-Murillo directly, the district court noted, among other things, that Panesso-Murillo was 48 years old; had a ninth grade education; had obtained a diesel engineering certification; was the father of four children; was born in Cartagena, Colombia; and had siblings living in Colombia. The district court also stated that, in an effort to make money, Panesso-Murillo had made the "wrong decision" while on board the vessel, unlike two of the seven people on board who had chosen not to be a part of the conspiracy.

The district court then heard Panesso-Murillo's statement of remorse, in which Panesso-Murillo suggested that he had committed the crime against his will. The district court questioned Panesso-Murillo about this statement and confirmed that Panesso-Murillo had willfully and voluntarily agreed to the conspiracy. The district court further stated:

> I know your attorney has been over this with you but I wanted you to hear that from me. What happened on board that boat to all the

4

people involved I don't know because I wasn't there.

Why the other people on board the vessel may or may not have been charged may have occurred for a variety of reasons. Those people may have been able to convince law enforcement that they were not part of the conspiracy and the possession.

There may have been other reasons why they were not charged. I don't know. But what has come to me before your words were that you admitted your guilt to Judge Wilson. And that you agreed to do this . . . .

The district court determined that Panesso-Murillo's total offense level was 33, his criminal history category was I, and his advisory guidelines range was 135 to 168 months. The district court denied Panesso-Murillo's request for a downward variance from the advisory guidelines range and imposed a 135-month sentence on each count, to be served concurrently. In so doing, the district court noted that it had considered the advisory guidelines as well as the sentencing factors in 18 U.S.C. § 3553(a).

Panesso-Murillo filed this appeal.

## II. DISCUSSION

### A. Minor-Role Reduction

Panesso-Murillo contends the district court erred in denying him a minor-role reduction because he did not assist in loading the drugs on the boat and had no equity interest in the drugs.[1]

---

[1] We review a district court's determination of the defendant's role in the offense for clear error. United States v. De Varon, 175 F.3d 930, 937-38 (11th Cir. 1999) (en banc).

5

A minor participant is one "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. n.5. The defendant has the burden of establishing his role in the offense by a preponderance of the evidence. United States v. De Varon, 175 F.3d 930, 939 (11th Cir. 1999) (en banc). Two principles guide a district court's consideration: (1) the court must compare the defendant's role in the offense with the relevant conduct attributed to him in calculating his base offense level; and (2) the court may compare the defendant's conduct to that of other participants involved in the offense. Id. at 940-45. When relevant conduct attributed to a defendant is identical to his actual conduct, he cannot prove that he is entitled to a minor-role adjustment simply by pointing to some broader scheme for which he was not held accountable. Id. at 941.

Here, the district court did not clearly err in refusing Panesso-Murillo a minor-role reduction. Under the first prong of De Varon, the district court held Panesso-Murillo accountable for only his own conduct, namely his involvement in the transport of 3,393.4 kilograms of cocaine, a large quantity of drugs. Under the second prong of De Varon, Panesso-Murillo was at least as culpable as his crewmates who participated in the transportation scheme.[2] Indeed, as the vessel's

_____

[2]Panesso-Murillo emphasizes that there were other individuals on the vessel who were not arrested, but there is no evidence in the record that Panesso-Murillo was less culpable than

6

chief engineer, it could be argued that his role was more vital to the enterprise than those of his crewmates. Although Panesso-Murillo's role may have been less than that of the vessel's captain, who was given a role enhancement, this fact does not automatically entitle Panesso-Murillo to a minor-role reduction. See id. at 944.

## B. Reasonableness

Panesso-Murillo also contends that his 135-month sentence is unreasonable because the district court failed to sufficiently consider his arguments in mitigation and the § 3553(a) factors.

After United States v. Booker, a district court in determining a reasonable sentence must consider the correctly calculated advisory guidelines range and the § 3553(a) factors. 543 U.S. 220, 258-64, 125 S. Ct. 738, 764-67 (2005); United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005).[3] Although the district court must consider the § 3553(a) factors, "nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). Rather, "an acknowledgment by the district court that it has considered the defendant's arguments and the factors in § 3553(a)

these individuals. Indeed, the only evidence in the record relating to these individuals suggests that Panesso-Murillo was more culpable.

[3]Apart from the failure to give a minor-role reduction already discussed, Panesso-Murillo does not challenge the district court's guidelines calculations.

7

is sufficient under <u>Booker</u>." <u>Talley</u>, 431 F.3d at 786.

We review the ultimate sentence imposed for unreasonableness in light of the § 3553(a) factors and the reasons given by the district court. <u>United States v. Williams</u>, 435 F.3d 1350, 1354-55 (11th Cir. 2006). The party who challenges the sentence bears the burden of showing that it is unreasonable. <u>Talley</u>, 431 F.3d at 788.

We cannot say that Panesso-Murillo's 135-month sentence, at the low end of the correctly calculated advisory guidelines range, is unreasonable. The district court stated that it considered the § 3553(a) factors in arriving at Panesso-Murillo's sentence, and it was not required to address each § 3553(a) factor explicitly. Furthermore, a review of the record reflects that the district court considered Panesso-Murillo's arguments with respect the § 3553(a) factors, including the nature and circumstances of the offense, Panesso-Murillo's characteristics and history and the need for deterrence.

**AFFIRMED.**