[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-11416
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 8, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-60041-CR-JIC

UNITED STATES OF AMERICA,

                                                              Plaintiff-Appellee,

                          versus

ALFREDO ACOSTA RAMIREZ,

                                                              Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 8, 2009)

Before TJOFLAT, DUBINA and PRYOR, Circuit Judges.

PER CURIAM:

Alfredo Acosta Ramirez appeals his sentence of 70 months of imprisonment

for conspiring to obstruct, delay, and affect commerce by robbery and extortion. 18 U.S.C. § 1951(a). Ramirez argues that he was entitled to a downward adjustment for his minor role in the robbery and his sentence is unreasonable. We affirm.

## I. BACKGROUND

In December 2006, Gustavo Laracuente and Jonathan Acosta stole approximately 3.8 million dollars in cash and negotiable instruments from Brinks guards during their delivery at a Florida branch of the Bank of America. Acosta, a former employee of Brinks, was familiar with the route used by Brinks. Laracuente and Acosta fled the scene in a stolen car and met Ramirez and Lizano at a prearranged location a few blocks from the robbery. Laracuente transferred the money into Acosta's white minivan, which Ramirez drove to Acosta's home. When Lizano and Laracuente arrived at Acosta's residence, the four divided the $300,000 of currency in the bags. The next day, Ramirez, Acosta, and Laracuente traveled to New York with a portion of the stolen currency.

Three days later, officers questioned the three men at a motel and seized $66,927 in cash and $2797 in money orders after the men provided conflicting accounts regarding the source of the money. A confidential witness later implicated Acosta and his accomplices. After his arrest, Acosta told authorities

2

that he, Laracuente, and Lizano planned the robbery; Ramirez had attended a meeting at Acosta's home a few hours before the robbery; Ramirez had transported Acosta and the stolen money to Acosta's home; and Ramirez had received $50,000 of the stolen currency.

Ramirez was arrested in Puerto Rico and gave authorities a different version of events. Ramirez stated that he had traveled from Puerto Rico to Florida with Acosta and Laracuente and refused to participate in the robbery. Ramirez admitted that he had been near the bank at the time of the robbery and he later saw Acosta, Laracuente, and Lizano at Acosta's house sorting the contents of the bags. Ramirez denied that he drove a getaway car or received any of the stolen money. Ramirez stated that he was confronted by a police officer outside his hotel room after the robbery and the officer entered his room and confiscated $48,000 that Ramirez had brought with him from Puerto Rico.

Ramirez and his three codefendants were indicted for two counts of conspiracy to obstruct, delay, and affect commerce by robbery and extortion, 18 U.S.C. § 1951(a), and one count of conspiracy to use and carry a firearm during a crime of violence, id. § 924(o). Ramirez and Laracuente were also indicted for possession of the firearm, id. § 924(c)(1), (2). Codefendant Lizano pleaded guilty to one count of conspiracy to interfere with interstate commerce and received a

3

sentence of 70 months of imprisonment. United States v. Lizano, No. 07-14096 (11th Cir. June 26, 2008). Ramirez pleaded guilty to conspiracy to interfere with interstate commerce, and the district court dismissed Ramirez's three remaining charges.

The presentence investigation report listed Ramirez's base offense level at 20, United States Sentencing Guidelines § 2B3.1(a) (Nov. 1989), and increased it by six levels because the loss was between 2.5 and 5 million dollars, id. § 2B3.1(b)(7)(G), by five levels for the use of a firearm, id. § 2B3.1(b)(2)(C), and by two levels because property of a financial institution was stolen, id. § 2B3.1(b)(1). The report then reduced the offense level by three points because Ramirez accepted responsibility for the crime and assisted in the investigation. Id. § 3E1.1(a), (b). With a criminal history of I, the report provided a sentencing range between 97 and 121 months of imprisonment.

Ramirez objected to the presentence report. Ramirez denied that he drove the minivan or was present at the meeting before the robbery, and he argued that he received $30,000 instead of $50,000 from the robbery. Ramirez alleged that he was less culpable than his co-defendants and requested a two-level reduction for his minor role in the offense. See id. § 3B1.2(b).

At the sentencing hearing, Ramirez repeated his objections to the

4

presentence report. Acosta testified that Ramirez did not help plan the robbery, Ramirez waited in Acosta's minivan during the robbery, and Ramirez did not count the robbery proceeds. Acosta also testified that he traveled from Puerto Rico with Ramirez, but Ramirez did not come to the United States to participate in the robbery.

The government presented testimony from agent George Miyar of the Federal Bureau of Investigation regarding Ramirez's involvement in the robbery. "[V]ery detailed" information supplied by a friend of Acosta's girlfriend established that Ramirez was recruited by and traveled with Acosta to Florida to commit the robbery. Further investigation led to the seizure of $48,000 from Ramirez by the Bergen County Police Department that was not attributable, as Ramirez had alleged, to his mother's casino winnings. Agent Miyar also found information to corroborate that Ramirez had helped "scout[]" the bank and had met with the other participants to plan the robbery.

The district court overruled Ramirez's objection to the presentence investigation. The court found that Ramirez "failed to prove by a preponderance of the evidence that he was substantially less culpable than the average participant" and denied the request for a downward adjustment. Because the parties had agreed to a loss amount between $250,00 and $800,000, the district court increased the

5

base offense level by three points, rather than the six points recommended in the presentence report, for a total offense level of 27, which provided a sentencing range between 70 and 87 months of imprisonment. After it "considered the statements of all parties, the presentence report[,]" and the statutory factors, the district court sentenced Ramirez to 70 months of imprisonment. The court found that it "would [not] be appropriate to sentence Mr. Acosta" to a greater sentence than co-defendant Lizano. The court also "note[d] for the record that even if a two level minor role reduction was granted, that [Ramirez's] guideline range would be fifty-seven to seventy-one months" and "[e]ven under those circumstances, . . . a reasonable sentence would be seventy months within that revised guideline range."

## II. STANDARDS OF REVIEW

The "determination of a defendant's role in the offense is a finding of fact to be reviewed only for clear error." United States v. Rodriguez De Varon, 175 F.3d 930, 937 (11th Cir. 1999). We review the reasonableness of a criminal sentence for an abuse of discretion. Gall v. United States, 128 S. Ct. 586, 594, 596–97 (2007). "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

6

## III. DISCUSSION

Ramirez presents two challenges to his sentence. First, Ramirez argues that he was entitled to a downward adjustment for his minor role in the conspiracy. Second, Ramirez argues that his sentence is unreasonable. We address each issue in turn.

### A. The District Court Did Not Clearly Err by Denying Ramirez a Downward Adjustment.

A defendant may receive a two-level downward adjustment for his minor role in the charged offense. U.S.S.G. § 3B1.2(b). To qualify for the adjustment, the defendant must establish by a preponderance of the evidence, De Varon, 175 F.3d at 939, that he was "less culpable than most other participants, but [that his] role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. n.5. The district court applies a two-part analysis to determine whether to award a downward adjustment. De Varon, 175 F.3d at 940–41. The court first determines the defendant's role in the criminal activity and next compares the defendant's conduct to that of his cohorts. Id. at 940–41, 944; see also U.S.S.G. § 3B1.2, cmt. n.3. These "[i]ntensely factual inquiries . . . are properly consigned to the experienced discretion of the district judge." Id. at 938.

The district court did not clearly err by denying Ramirez a minor-role reduction. Ramirez did not play a minor role in the conspiracy. Ramirez traveled

to Florida to commit the robbery; attended a meeting at Acosta's home to plan the robbery; transported Acosta and the stolen proceeds to Acosta's home; and received a share of the proceeds.

### B. Ramirez's Sentence Is Reasonable.

The district court did not abuse its discretion by imposing a sentence at the low end of the advisory guideline range. Ramirez complains that the district court did not consider his minor role in the offense and his minimal criminal history, but the record refutes this argument. The district court considered the sentencing factors and imposed a sentence identical to that received by Ramirez's cohort who drove the other getaway car. See 18 U.S.C. § 3553(a); Gall, 128 S. Ct. at 597. Ramirez's sentence is reasonable.

### IV. CONCLUSION

Ramirez's sentence is **AFFIRMED.**