[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13817
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 18, 2012
JOHN LEY
CLERK

D.C. Docket No. 1:11-cr-00084-JOF-ECS-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ITOHAN OTABOR,

Defendant - Appellant.

_____

No. 11-13863
Non-Argument Calendar

_____

D.C. Docket No. 1:11-cr-00084-JOF-ECS-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHNSON OTABOR,

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(May 18, 2012)

Before BARKETT, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

In this consolidated appeal, Johnson Otabor (Johnson) and his wife Itohan Otabor (Itohan) appeal their sentences after pleading guilty to conspiracy to import into the United States at least one kilogram of heroin in violation of 21 U.S.C. § 963, conspiracy to possess with the intent to distribute at least one kilogram of heroin in violation of 21 U.S.C. § 846, importation into the United States of at least one kilogram of heroin in violation of 21 U.S.C. § 952, and possession with the intent to distribute at least one kilogram of heroin in violation of 21 U.S.C. § 841. On appeal both Johnson and Itohan argue that the district court erred by not granting them a minor-role reduction under U.S.S.G. § 3B1.2. Itohan also questions the reasonableness of her sentence issued the lower end of the Guideline range. After review, we affirm the district court.

I.

The Otabors are Nigerian nationals who, after falling into financial trouble, agreed to import heroin for a Mrs. Pat and Mr. Small. Before fully agreeing to the scheme, Itohan did a test run from Nigeria to Atlanta after swallowing pellets of cola beans. Following the test run, the Otabors attempted to back out of the plan, but Mrs. Pat and Mr. Small threatened them. Thereafter, the Otabors agreed to smuggle the heroin in exchange for $1,500.00 for every 100 grams they successfully transported into the United States. If the Otabors had been successful, then they would have received about $28,500.00 for importing the heroin.

During their initial run, Customs and Border Protection (CBP) stopped Johnson and Itohan, along with their two-year old daughter, in Atlanta, Georgia. Both quickly admitted to swallowing pellets of heroin, and CBP Officers found 1.9163 kilograms of heroin between Johnson and Itohan. Itohan imported 675.3 net grams of fifty-one percent pure heroin, and Johnson imported 1,241 net grams of fifty-four percent pure heroin. Initially the Officers only found 103 pellets that Johnson swallowed, even though Johnson insisted that he had swallowed 104 pellets. A few weeks later Johnson passed the last pellet while in custody and immediately turned it over to authorities.

At sentencing the Otabors both received sentences below the statutory

3

minimum because they qualified for the safety-valve provision under U.S.S.G. § 2D1.1(b)(11), and their sentences were further decreased by three levels because they accepted responsibility for their conduct. With a criminal history category of I, their recommended Guideline range was seventy to eighty-seven months. The district court denied their request for a minor-role reduction and sentenced Itohan to seventy months and Johnson to sixty months.

II.

We review the district court's determination of whether a defendant qualifies for a minor-role adjustment under the Guidelines for clear error. *United States v. Rodriguez De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). The defendant bears the burden of proving by a preponderance of the evidence that his role was minor. *Id.* at 939.

There are two general principles that inform a district court's determination of whether a defendant qualifies for a minor-role adjustment: "first, the defendant's role in the relevant conduct for which she has been held accountable at sentencing, and second, her role as compared to that of other participants in her relevant conduct." *Id.* at 940. In considering the first principle, if "the relevant conduct attributed to a defendant is identical to her actual conduct, she cannot prove that she is entitled to a minor role adjustment simply by pointing to some

4

broader criminal scheme in which she was a minor participant but for which she was not held accountable." *Id.* at 941. Furthermore, if the drug courier's conduct is "limited to her own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs." *Id.* at 942–43. Finally, the sentencing court typically takes into consideration a number of factors in drug courier cases to decide what role a defendant played, including "amount of drugs, fair market value of drugs, amount of money to be paid to the courier, equity interest in the drugs, role in planning the criminal scheme, and role in the distribution." *Id.* at 945.

Here, the district court did not clearly err in finding that the Otabors were indispensable to the drug-importation scheme. Although they may have been cogs in a larger drug scheme, the Otabors were not minor participants in the crimes actually attributed to them. Furthermore, the district court did not err in finding that the Otabors smuggled a large amount of heroin into the United States, the market value of the heroin would be high because of its high purity level, and the Otabors would be paid a large amount for the importation ($28,500). Therefore, we affirm the district court's decision to not apply the minor-role reduction to the Otabors' sentences. Furthermore, the small difference between the amount carried by Itohan and Johnson does not warrant a minor-role reduction for Itohan.

5

III.

Itohan also appeals the reasonableness of her sentence. We review the reasonableness of a sentence under the abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007). We first ask if a sentence is procedurally reasonable by looking at whether the district court properly calculated the Guideline range, treated the Guidelines as advisory, considered the § 3553(a) factors, and adequately explained the chosen sentence. *Id.* at 51, 128 S. Ct. at 597. After determining that a sentence is procedurally reasonable, we then examine whether the sentence is substantively reasonable. *Id.* Although we do not assume a sentence within the Guidelines range is reasonable, we expect it to be so. *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008).

Here, the district court correctly calculated the Guidelines range, treated that Guidelines as advisory, and considered the § 3553(a) factors. Itohan's sentence was also substantively reasonable. The district court considered the fact that she did a test run as a factor that favored a higher sentence than her husband. The district court did not abuse its discretion when it sentenced Ithoan to a seventy month sentence, at the low end of the Guideline range.

Upon review of the record and the parties briefs, we affirm the district court.

**AFFIRMED.**

6