[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13935

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JEYKER HERRERA FELIPE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:12-cr-20752-JLK-1

_____

Before WILSON, JILL PRYOR, and LUCK, Circuit Judges.

PER CURIAM:

Jeyker Herrera Felipe appeals the 24-month sentence, which the district court imposed after he pled guilty to one count of healthcare fraud. He argues that the district court erred when it refused to apply a two-level downward adjustment to his offense level under the Sentencing Guidelines for his minor role in the fraudulent scheme. After careful review, we vacate and remand.

I.

This criminal case arises out of a healthcare fraud scheme involving AD Pharmacy. The pharmacy submitted false and fraudulent claims to Medicare and Medicaid drug plan sponsors for prescription drugs that were never purchased or provided to Medicare beneficiaries. It received $615,725 in payments for its fraudulent claims.

According to the government, Jose L. Valdes Gonzalez was the mastermind behind the fraudulent scheme. To make the pharmacy appear to be a legitimate business, Gonzalez operated it in Herrera Felipe's name. AD Pharmacy filed documents with the State of Florida that listed Herrera Felipe as its sole officer. In addition, Herrera Felipe opened two bank accounts for the pharmacy and signed a lease on its behalf. Gonzalez kept the checkbooks and debit cards for the pharmacy's bank accounts. Because Herrera Felipe was the sole signatory on the bank accounts, Gonzalez would

direct him to make cash withdrawals or sign checks to disburse money that the pharmacy was paid on the fraudulent claims.

In 2012, Gonzalez was arrested, and AD Pharmacy ceased operations. Around this time, Herrera Felipe left the United States and returned to Cuba where his family lived.

Later that year, a federal grand jury in the Southern District of Florida returned an indictment charging Herrera Felipe with five counts of healthcare fraud in violation of 18 U.S.C. § 1347. Because Herrera Felipe was in Cuba, he was not immediately apprehended.

In March 2022, Herrera Felipe attempted to enter the United States at the border in Texas and was arrested. He was then transported to the Southern District of Florida where the healthcare fraud charges were pending. He ultimately pled guilty to one count of healthcare fraud, and the government agreed to dismiss the remaining counts.

In advance of sentencing, the probation office prepared a presentence investigation report ("PSR"). The PSR stated that Herrera Felipe's base offense level was 6. *See* U.S. Sent'g Guidelines Manual § 2B1.1(a)(2) (U.S. Sent'g Comm'n 2021). It then applied a 14-level adjustment to the offense level based on the loss amount of $615,725. *See id.* § 2B1.1(b)(1)(H). The PSR also applied a three-level reduction for acceptance of responsibility, yielding a total offense level of 17. Given the total offense level and Herrera Felipe's criminal history category of I, the PSR calculated his guideline range as 24 to 30 months' imprisonment.

Prior to the sentencing hearing, Herrera Felipe filed objections to the PSR, arguing that he was entitled to an additional two-level reduction to his offense level because he was a minor participant in the scheme. *See id.* § 3B1.2(b). He emphasized his limited involvement, noting that he did not "prepare or submit" any insurance claims or "make any independent decisions regarding the conduct in this case." Doc. 33 at 3–4.[1] He relied on commentary to the Guidelines, which stated that "a defendant in a health care fraud scheme, whose participation in the scheme was limited to serving as a nominee owner and who received little personal gain relative to the loss amount, may receive an adjustment under this guideline." U.S.S.G. § 3B1.1 cmt. n.3. If the court applied the adjustment, Herrera Felipe observed, his total offense level would be reduced to 15 and his guidelines range would become 18 to 24 months.

The government agreed that Herrera Felipe should receive a minor-role adjustment. It noted that a similarly situated defendant in a related case, Angel Calderin, had also received a minor-role adjustment. The government explained that Calderin faced similar charges after Gonzalez opened a pharmacy in his name.

At the sentencing hearing, Herrera Felipe renewed his request for a minor-role adjustment, noting that the government joined in the recommendation. The court initially "approve[d] the joint recommendation" of the parties. Doc. 49 at 6. It calculated the total offense level as 15 and the guidelines range as 18 to 24 months.

---

[1] "Doc." numbers refer to the district court's docket entries.

It also stated that it was "inclined to sentence within the guideline range." *Id.*

Herrera Felipe then requested a downward variance and asked the court to impose a sentence of one year and one day. He argued that a variance was appropriate given his limited role in the scheme. He also asked the court to consider that he left Florida in 2012 to return to Cuba to care for his ailing grandmother, not because of the charges in the case. And he explained that he had returned to the United States with the intention of working and providing for his family in Cuba.

The government opposed the request for a variance and urged the court to impose a 24-month sentence. The government argued that a sentence at the high-end of the guidelines range was appropriate because Herrera Felipe had left the country after Gonzalez and others were arrested.

After considering the parties' positions, the court denied the request for a variance based on the § 3553(a) factors.[2] The court

---

[2] Under § 3553(a), a district court is required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of the statute. 18 U.S.C. § 3553(a). These purposes include the need to: reflect the seriousness of the offense; promote respect for the law; provide just punishment; deter criminal conduct; protect the public from the defendant's future criminal conduct; and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment. *Id.* § 3553(a)(2). The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing

discussed the seriousness of the offense and the need to deter others who might seek to participate in a conspiracy to commit Medicare fraud. The court also stated that it had considered Herrera Felipe's arguments about his personal history and characteristics.

After denying the request for a variance, the court changed its position on the calculation of Herrera Felipe's guidelines range. The court stated that the total offense level was 17 and the applicable guidelines range was 24 to 30 months. At that point, Herrera Felipe reminded the court that it had decided to apply a minor-role adjustment. And the government confirmed that it agreed to the adjustment.

The court then described the extent of Herrera Felipe's participation in the scheme. It stated that he had agreed "to appear to be the owner of something" and to "let [his] name be used." *Id.* at 34. It acknowledged that Herrera Felipe was "paid a whole lot less" than others involved in the scheme and that he "may have been outsmarted, he may have been tricked, [and] he may have been cheated by his codefendants." *Id.* at 34–35.

But the court refused to apply a minor-role adjustment because it did not "think there is such a thing as a minor role in a criminal conspiracy in medical fraud." *Id.* at 33. The court summarized its reasoning by stating: "If you're going to get involved with

---

Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)–(7).

[a scheme] knowingly, you have to pay the penalty" because "that's the life of crime." *Id.* at 35.

Herrera Felipe responded that the district court's position—that a minor-role adjustment should not be applied in a healthcare fraud scheme—conflicted with commentary to the Guidelines. He pointed out that the commentary stated that a role adjustment may apply when a defendant in a healthcare fraud scheme's participation "was limiting to serving as a nominee owner" and he "received little personal gain relative to the loss amount." *Id.* at 35–36 (discussing U.S.S.G. § 3B1.2).

The district court was unpersuaded. It stated that it was refusing to award a minor-role adjustment to give a "clear message" to the public that "this Court and the Congress and the law does not abide by or permit or agree with this type of manipulation of the fraud where it works to somebody's advantage." *Id.* at 38. The court ultimately imposed a 24-month sentence.

This is Herrera Felipe's appeal.

## II.

On appeal, Herrera Felipe argues that the district court erred in denying him a two-level reduction in offense level under U.S.S.G. § 3B1.2(b) because of his minor role in the offense.

Section 3B1.2 provides that a defendant is entitled to a two-level decrease in his offense level if he was a "minor participant" in the criminal activity. U.S.S.G. § 3B1.2(b). A "minor participant" is someone "who is less culpable than most other participants in the

criminal activity, but whose role could not be described as minimal." *Id.* § 3B1.2 cmt. n.5. The decision whether to apply a minor-role adjustment is "based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." *Id.* § 3B1.2 cmt. n.3(C).

We review a district court's denial of a role adjustment for clear error. *See United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016). "Clear error review is deferential, and we will not disturb a district court's findings unless we are left with a definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted). We have explained that a district court's "choice between two permissible views of the evidence as to the defendant's role in the offense will rarely constitute clear error so long as the basis of the trial court's decision is supported by the record and does not involve a misapplication of a rule of law." *Id.* (internal quotation marks omitted).

When deciding whether to apply a minor-role adjustment, we have instructed district courts to consider "first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and, second, [his] role as compared to that of other participants in [his] relevant conduct." *United States v. Rodriguez De Varon*, 175 F.3d 930, 940 (11th Cir. 1999). "These principles advance both the directives of the Guidelines and our case precedent by recognizing the fact-intensive nature of this inquiry and by maximizing the discretion of the trial court in determining the defendant's role in the offense." *Id.* at 934.

The commentary to § 3B1.2 also guides courts when evaluating minor-role adjustments. It directs district courts to consider the following factors: (a) "the degree to which the defendant understood the scope and structure of the criminal activity"; (b) "the degree to which the defendant participated in planning or organizing the criminal activity"; (c) "the degree to which the defendant exercised decision-making authority"; (d) "the nature and extent of the defendant's participation in the commission of the criminal activity"; and (e) "the degree to which the defendant stood to benefit from the criminal activity." U.S.S.G. § 3B1.2 cmt. n.3(C). The commentary also advises that a defendant may receive a minor-role adjustment when he is held accountable for a loss amount that "greatly exceeds [his] personal gain from a fraud offense" or when he "had limited knowledge of the scope of the scheme." *Id.* § 3B1.2 cmt. n.3(A).

This commentary was added by Amendment 794, a clarifying amendment that took effect in November 2015. *See Cruickshank*, 837 F.3d at 1194. The Sentencing Commission promulgated Amendment 794 after finding that the "mitigating role [adjustment was] applied inconsistently and more sparingly than the Commission intended." U.S.S.G. supp. to app. C, amend. 794, Reason for Amendment. It advises that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline." *Cruickshank*, 837 F.3d at 1194 (quoting Amendment 794). It also states that the fact that a defendant performed a task that was "essential or indispensable" to the criminal

activity "is not determinative," and such a defendant still may receive an adjustment if he was "substantially less culpable than the average participant in the criminal activity." *Id.* (quoting Amendment 794).

When deciding whether to grant a minor-role adjustment, a court "must consider all of the[] factors [identified in § 3B1.2's commentary] to the extent applicable, and it commits legal error in making a minor role decision based solely on one factor." *United States v. Valois*, 915 F.3d 717, 732 (11th Cir. 2019) (internal quotation marks omitted). Our decision in *Cruickshank* is instructive. *See* 837 F.3d at 1192–95.

In *Cruickshank*, we reviewed a district court's denial of a minor-role adjustment. The defendant in that case was apprehended on a vessel in international waters that was carrying over 150 kilograms of cocaine. *Id.* at 1186. At sentencing, when explaining why it was not applying a minor-role adjustment, the district court suggested that "the quantity of cocaine being transported . . . was so large that no participant in the scheme could ever have been eligible for a minor-role reduction." *Id.* at 1194. Although the district court was permitted to "consider[] the drug quantity with which the defendant was involved as an indicator of his role," we concluded that it was "legal error for the district court to say that this is the *only* factor to be considered in a case like this one." *Id.* at 1195 (emphasis in original). We thus vacated the sentence and remanded for the district court to consider whether to apply a minor-role adjustment "based on the totality of the circumstances, taking

into account the variety of factors laid out in *De Varon* and Amendment 794." *Id.*

After carefully reviewing the record in this case, we conclude that the district court committed a similar error here. Although the court initially agreed with the parties that Herrera Felipe was entitled to a minor-role adjustment, it abruptly changed its position and refused to apply the adjustment. The court's explanation for not applying the adjustment shows that it applied a categorical rule that no defendant in a healthcare fraud conspiracy case should ever receive a minor-role adjustment. *See* Doc. 49 at 33 (stating "I don't think there is such a thing as a minor role in a criminal conspiracy in medical fraud where somebody helps" the mastermind of the conspiracy). Because the district court's statements showed that it considered only one factor in deciding whether to apply a minor-role adjustment—whether Herrera Felipe assisted the mastermind of a healthcare conspiracy—it made a legal error. *See Cruickshank*, 837 F.3d at 1195; *see also United States v. Presendieu*, 880 F.3d 1228, 1250 (11th Cir. 2018) (vacating and remanding because district court made a legal error in denying minor-role adjustment when it considered "only one of many relevant factors").

Given this error, "we think the wisest course of action is to vacate the district court's decision and remand for resentencing." *Cruickshank*, 837 F.3d at 1195. On remand, to determine whether to apply a minor-role adjustment, the district court should examine Herrera Felipe's role in the relevant criminal conduct based on the

totality of the circumstances and look to the relevant factors artic-
ulated in *De Varon* and the commentary to U.S.S.G. § 3B1.2.[3]

### III.

For the reasons set forth above, we vacate Herrera Felipe's
sentence and remand for resentencing consistent with this opin-
ion.[4]

**VACATED AND REMANDED.**

---

[3] In its appellate brief, the government argues that based on the totality of the
circumstances, a factfinder could conclude that Herrera Felipe played more
than a minor role. But there is no indication in the record that the district court
relied on such reasoning when it denied the minor-role adjustment. We thus
conclude that remand is appropriate.

[4] Herrera Felipe also argues on appeal that his sentence should be vacated
because it was substantively unreasonable. Because we conclude that remand
is warranted for the district court to consider the minor-role adjustment issue,
we do not reach his substantive reasonableness argument.