[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12532

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

*versus*

AMBER REWIS BRUEY,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:21-cr-00074-TPB-KCD-1

_____

Before WILSON, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Amber Rewis Bruey appeals her total sentence of 48 months' imprisonment with 3 years of supervised release and an order of restitution for conspiracy to commit wire fraud, wire fraud, conspiracy to commit money laundering, and illegal monetary transactions. On appeal, Bruey argues that the district court incorrectly applied the sophisticated laundering enhancement under U.S.S.G. § 2S1.1(b)(3) based on facts supporting the sophisticated means enhancement under U.S.S.G. § 2B1.1(b)(10)(C). Bruey further argues that if the district court applied the right standard under § 2S1.1(b)(3), it would have concluded that the enhancement did not apply. For the following reasons, we affirm.

## I.

Bruey was charged in an indictment with: one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349; ten counts of wire fraud in violation of 18 U.S.C. §§ 1343, 1349, and 2; one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h); and four counts of illegal monetary transactions in violation of 18 U.S.C. §§ 1957 and 2. Bruey plead guilty to these counts, and the district court adjudicated her guilty.

Before sentencing, a probation officer prepared a presentence investigation report ("PSI"), which reported the following. Bruey and her husband, a co-defendant below, ("the Brueys") owned and operated different purported businesses. Bruey also

individually owned multiple purported businesses.  Between 2020 and 2021, the Brueys submitted fraudulent applications for loans under two programs authorized by the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act").  Pub. L. No. 116-136, 134 Stat. 281 (2020).

First, between April 2, 2020, and February 23, 2021, the Brueys applied for 15 Economic Injury Disaster Loans ("EIDL"). *Id.* § 1110, 134 Stat. at 306.  Eleven of these applications had Bruey's name on them, and six of the fifteen were ultimately funded for a total of $763,300.  In support of at least four of the eleven applications, Bruey created false documents to give the impression that the business and application were legitimate.  These documents included a fraudulent tax return and a detailed portion of a fraudulent business lease.  She also created false Google business pages, business websites to correspond to the Google business information, and Google reviews by alias accounts which had purported feedback and customer photographs.  For example, on April 3, 2020, she submitted a fraudulent EIDL application for one of her purported businesses in which she falsely claimed that it had $96,228 in gross revenue.  She also falsely certified that she had not been on probation for any criminal offense.  The Small Business Administration ("SBA") initially declined her application, believing it to be a duplicate.  Bruey filed a request for reconsideration and in support of her request, she submitted a fraudulent 2019 Schedule C Form 1040 tax return that listed the business's gross income as $232,245.  She also created and submitted a fraudulent income statement that mirrored the information on the false tax return.

After Bruey signed a form attesting to the submitted figures, the SBA approved her application and issued her $113,200.

Second, between April 12, 2020, and June 25, 2020, the Brueys applied for twelve loans under the Paycheck Protection Program ("PPP").  *Id.* § 1102, 134 Stat. at 286 (codified at 15 U.S.C. § 636(a)(36)).  Ten of these applications had Bruey's name on them, and six of the twelve were funded for a total around $118,000.  In support of at least five applications, Bruey again created false documents to give the impression that her business and application were legitimate.  These fictitious documents were relied upon by lenders in approving her PPP loans.  Bruey also created fraudulent tax returns for different years claiming business income between $96,000 and $226,540, and income statements that aligned with the income claimed on those tax returns.  For example, in support of one application filed on April 12, 2020, Bruey submitted a fraudulent 2019 1099-MISC tax document that reflected her yearly income as $96,000, and again falsely denied that she had been on probation within the last five years.  She also submitted a fraudulent 2019 Form 1040 Schedule C tax document listing the gross income for her business as $132,245 with a net profit of $114,883.  But records from the IRS revealed she never filed this tax document.  Based on the information supplied in the fraudulent documents, the lender approved her loan application and deposited $20,000 in one of Bruey's bank accounts.

In all, the Brueys submitted over two dozen fraudulent applications seeking benefits totaling close to $2 million.  Twelve of

these applications were approved, and the Brueys received $880,000 in funds. Bruey misused these funds by, among other things, satisfying a personal debt and purchasing vehicles and a home.

After grouping all the counts together for guidelines calculations purposes, *see* U.S.S.G. § 3D1.2(d), the PSI calculated a base offense level of 23 pursuant to U.S.S.G. § 2S1.1(a)(1). The PSI assessed a two-level enhancement under U.S.S.G. § 2S1.1(b)(2)(B) because Roberts was convicted of an offense under 18 U.S.C. § 1956. The PSI then assessed another two-level enhancement:

> Pursuant to USSG § 2S1.1(b)(3), [i]f subsection (b)(2)(B) applies; and the offense involved sophisticated means, increase by two levels. In this case, Amber Bruey submitted false and fictious documents, including: tax returns, 1099-MISC documents, and income statements, all in support of her applications for the loans. Amber Bruey also created at least one false and fictious business website, a two-page detailed portion of a lease agreement, a Google business page, and at least one Google review for her business, all to make her businesses that were subject of the applications appear legitimate. Considering this, it appears the offense involved sophisticated means, and a two-level increase is warranted.

The PSI then decreased the offense level by two because Bruey demonstrated acceptance of responsibility for the offense, *see* U.S.S.G. § 3E1.1(a), and decreased the offense level by one because Bruey assisted authorities in the prosecution of her own

misconduct by timely notifying them of her intention to enter a guilty plea, *see* U.S.S.G. § 3E1.1(b).  Therefore, her total offense level was 24.  Bruey's criminal history category was III based on a criminal history score of four.  Therefore, her guidelines range was 63 to 78 months.

In her written objection, Bruey objected to certain intended loss calculations.  Bruey also objected "to the +2 enhancement [assessed] under USSG § 2B1.1(b)(10)(C)," and to the statements in the PSI that Bruey submitted false or fictitious websites, a false and fictitious lease agreement, and a false and fictitious partnership agreement.  Bruey argued that "the fraud perpetrated in this matter is entirely unremarkable and there was no effort—*none*—to conceal or disguise the expenditure of criminal proceeds."  Bruey also said that "this was an entirely unsophisticated fraud followed by conspicuous disbursements of the fraudulent proceeds from unconcealed accounts."  Bruey went on to distinguish from other cases because here (1) there were no false identities, fraudulent accounts, fictitious entities, corporate shells, or offshore accounts; (2) the conduct at issue occurred over a short period; and (3) the scheme was not "especially complex or especially intricate," because there was not a great amount of planning or concealment.  Instead, Bruey "submitted false loan applications and fictitious tax documentation—mere baseline offense conduct in the fraudulent acquisition of financing from a lending institution."

In response, the PSI cited the "USSG § 2S1.1 (b)(3) commentary," which "instructs that conduct for which [the enhancement]

would apply typically involves the use of fictitious entities, shell corporations, layering transactions, or offshore financial accounts." The PSI then turned to the "multi-faceted" nature of Bruey's conduct, namely the fact that Bruey was both submitting fake documents to loan providers and creating public pages about her purported businesses to make them look legitimate. The PSI also noted that the Brueys opened accounts at different banks that had no purpose other than to accept the loan proceeds. And the PSI cited two cases from our sister circuits "which appear[] to have a similar basis for the sophisticated means enhancement." *See United States v. Garcia-Pastrana*, 584 F.3d 351 (1st Cir. 2009); *United States v. Edelmann*, 458 F.3d 791 (8th Cir. 2006).

At her sentencing hearing, Bruey objected to the "sophisticated means enhancement" but not to the factual accuracy of the PSI. Her counsel sought to distinguish both cases relied on by the PSI. Counsel argued that creating false Google business pages and leaving false feedback is simple, fast, and easy, and noted that the Brueys received funds into accounts with their names on them, unlike other cases in which defendants used accounts that were not tied to their identity.

Counsel also sought to distinguish Bruey's case from past cases in this circuit, all of which concerned the sophisticated means enhancement under USSG § 2B1.1(b)(10)(C). *See United States v. Feaster*, 798 F.3d 1374 (11th Cir. 2015); *United States v. Ghertler*, 605 F.3d 1256 (11th Cir. 2010); *United States v. Mendez*, 420 F. App'x 933 (11th Cir. 2011). Counsel then cited the guidelines commentary for

the sophisticated means enhancement, which provides that it ap-
plies to "especially complex or especially intricate offense con-
duct," § 2B1.1(b)(10)(C) cmt. n.9(B) and contended that Bruey's
conduct was "neither advanced nor intricate nor out of the ordi-
nary" when compared to cases from this circuit, largely because the
conduct at issue only lasted for a short period and did not involve
false identities, fraudulent accounts, or fictitious entities.

In response, the government outlined what it "believe[d]
was a sophisticated means of carrying out this fraud." As for PPP
applications, Bruey "manufactured and created . . . fraudulent tax
documents" and "false income statements." She also "created false
1040s, which included false information about the gross receipts or
sales of each business, including their returns and allowances, costs
of goods sold, [and] gross profits." As for the EIDL applications,
the government pointed out that Bruey created the Google busi-
ness pages, with falsified reviews from different fake accounts, and
at least one fake website. While, in the government's eyes, "this
[was not] some Einstein level of sophistication," the government
believed it "warrant[ed] consideration for whether the sophisti-
cated means enhancement would apply." Bruey also, the govern-
ment noted, submitted falsified documents to the SBA in response
to an inquiry about an application.

After hearing these arguments, the district court then over-
ruled the objection:

> Basically what I've heard from the defense is, taking
> the totality of this activity, breaking it up into small

pieces, and pointing out that it happened over a short period of time, and, you know, any one or two of these things I might agree with, but the totality of what occurred here rises to the level to deserve this enhancement, so the objection[] is overruled.

After reconvening a few weeks later, the district court sentenced Bruey to 48 months imprisonment, below the guidelines range of 63 to 78 months, with three years of supervised release on each count to be served concurrently. The district court also imposed restitution in the amount of $881,659, which Bruey owes jointly and severally with her husband. Bruey again objected to the "sentence enhancement for sophisticated means," disagreeing with the district court's decision to "impose[] the additional two levels for sophisticated means." Bruey then objected to the procedural and substantive reasonableness of the sentence.

This appeal followed.

## II.

We review a district court's interpretation and application of the Guidelines *de novo*. *United States v. Jayyousi*, 657 F.3d 1085, 1114 (11th Cir. 2011). We review a district court's finding that the defendant used sophisticated means, a finding of fact, for clear error. *United States v. Barrington*, 648 F.3d 1178, 1199 (11th Cir. 2011). "Under this standard, we will not disturb a district court's findings 'unless we are left with a definite and firm conviction that a mistake has been committed.'" *United States v. Clarke*, 562 F.3d 1158, 1165 (11th Cir. 2009) (quoting *United States v. Crawford*, 407 F.3d 1174, 1177 (11th Cir. 2005)). "So long as the basis of the trial court's

decision is supported by the record *and* does not involve a misapplication of a rule of law," we will rarely conclude that the district court clearly erred. *United States v. Rodriguez De Varon*, 175 F.3d 930, 945 (11th Cir. 1999).

If a defendant, however, "induces or invites the district court into making an error," *United States v. Stone,* 139 F.3d 822, 838 (11th Cir.1998), then we do not reach the merits of her argument on appeal. *See United States v. Ross*, 131 F.3d 970, 988 (11th Cir. 1997) ("It is 'a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party.'") (quoting *Crockett v. Uniroyal, Inc., 772 F.2d 1524, 1530 n. 4 (11th Cir. 1985))*). This "doctrine stems from the common sense view that where a party invites the trial court to commit error, [she] cannot later cry foul on appeal." *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009).

### III.

While both provide for a two-level increase, the enhancements found in § 2B1.1(b)(10)(C) and § 2S1.1(b)(3) apply to different conduct. The enhancement found in § 2B1.1(b)(10)(C) applies when a fraudulent scheme "involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." The commentary to the guidelines defines "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2B.1 cmt. n.9(B). "Conduct such as hiding assets or transactions, or both, through the use of

fictitious entities, corporate shells, or offshore financial accounts . . . ordinarily indicates sophisticated means." *Id.* Further, our cases provide that "[e]ach action by a defendant need not be sophisticated in order to support this enhancement," so long as "the totality of the scheme was sophisticated." *Barrington*, 648 F.3d at 1199.

As for § 2S1.1(b)(3), it applies when a money-laundering offense "involved sophisticated laundering." The commentary to the guidelines defines "sophisticated laundering" as "complex or intricate offense conduct pertaining to the execution or concealment of the 18 U.S.C. § 1956 offense." U.S.S.G. § 2S1.1(b)(3) cmt. n.5(A). Sophisticated laundering "typically involves the use of (i) fictitious entities; (ii) shell corporations; (iii) two or more levels (i.e., layering) of transactions, transportation, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate; or (iv) offshore financial accounts." *Id.*

The dispute here centers over which enhancement the district court applied, and whether the district court clearly erred in applying it. Bruey contends that the district court applied the sophisticated laundering enhancement under U.S.S.G. § 2S1.1(b)(3), for this was the enhancement cited in the PSI. And because the district court's focus was on the relevant factors under § 2B1.1(b)(10)(C) when it overruled Bruey's objection to this enhancement, the district court, according to Bruey, conflated the legal standards and committed reversible error. Bruey also argues that, even assuming the district court applied the right standard,

her conduct does not warrant the enhancement under § 2S1.1(b)(3).

The government, on the other hand, argues that the district court justifiably applied the enhancement under § 2B1.1(b)(10)(C). Even though the PSI cited § 2S1.1(b)(3), the government contends that the PSI's description of Bruey's conduct instead implicated § 2B1.1(b)(10)(C). And, according to the government, "the parties clearly understood what the probation office meant" given the focus in front of the district court on whether Bruey's fraudulent conduct included "sophisticated means." The government also argues that Bruey's "counsel invited any error by expressly invoking section 2B1.1(b)(10)(C) in his objections to the PSR and at sentencing." The government thus argues that the district court did not clearly err in finding that the "sophisticated means" enhancement applied under § 2B1.1(b)(10)(C), and that, in any case, Bruey forfeited any potential argument on this front because she did not challenge the district court's application of § 2B1.1(b)(10)(C) in her initial brief.

We conclude that Bruey is not entitled to relief. First, Bruey invited the district court to consider the factors relevant to § 2B1.1(b)(10)(C) in deciding whether a two-level enhancement applied. Starting with her written objection, Bruey objected to "the +2 enhancement [assessed by the PSI] under USSG § 2B1.1(b)(10)(C)." Bruey proceeded to argue that her conduct did not fit what was required for an enhancement under § 2B1.1(b)(10)(C) based on the commentary to the guidelines and our cases interpreting and applying the enhancement. Bruey also

22-12532                Opinion of the Court                13

closed her written objection by arguing that "the § 2B1.1(b)(10)(C) enhancement . . . is entirely unsubstantiated and must be removed." Bruey's counsel reprised these arguments in front of the district court, objecting to "the sophisticated means enhancement," distinguishing cases in which we found the district court did not err in applying the enhancement, and informing the district court that Bruey's conduct was not that complex or intricate as required by § 2B1.1(b)(10)(C) cmt. n.9(B).

On appeal, Bruey argues instead that the district court's consideration of the very factors that she asked it to consider is cause for reversal. After extending this invitation below, Bruey cannot now "cry foul on appeal." *Brannan*, 562 F.3d at 1306; *see Stone*, 139 F.3d at 838 ("[A] defendant should not benefit from introducing error at trial with the intention of creating grounds for reversal on appeal.").

Underlying Bruey's other argument, that her conduct does not justify a two-level enhancement under § 2S1.1(b)(3), is the assumption that district courts are tethered to the PSI's recommendations. But our case law provides otherwise. As we have made clear, "district courts are not bound by the facts and recommendations set forth in a PSI; they may choose not to adopt the facts as recited in the report or not to apply the Guidelines in the proposed manner." *United States v. Plasencia*, 886 F.3d 1336, 1343 (11th Cir. 2018). This means that "with proper notice, a court may apply Guidelines enhancements not identified in the PSI." *Id.*

Here, a review of the record confirms that the district court's decision to apply a two-level enhancement was based on its determination that Bruey's conduct involved "sophisticated means" under § 2B1.1(b)(10)(C). In front of the district court, the focus was on whether Bruey's conduct involved "sophisticated means." Bruey's counsel argued that "[t]here is no sophisticated means in this case," and said the government would have to prove otherwise to the district court. After Bruey made her case using only authorities relevant to interpreting and applying § 2B1.1(b)(10)(C), the government responded by outlining what it believed was "a sophisticated means of carrying out this fraud," and then concluded by stating that "while this isn't some Einstein level of sophistication," it did warrant "consideration for whether the sophisticated means enhancement would apply." After hearing arguments, the district court overruled Bruey's objection and concluded that "the totality of what occurred here rises to the level to deserve this enhancement." Bruey's counsel later interpreted this as the district court "impos[ing] the additional two levels for sophisticated means." We agree with Bruey's trial counsel that this is the best reading of the record, even though Bruey's appellate counsel asks us to conclude otherwise. We also conclude that Bruey had notice with respect to the district court's application of the sophisticated means enhancement, given that she thoroughly litigated its applicability below. We thus conclude that the district court

22-12532                Opinion of the Court                15

applied the sophisticated means enhancement under § 2B1.1(b)(10)(C) and we affirm Bruey's sentence.[1]

**AFFIRMED.**

---

[1] Because Bruey did not challenge the district court's application of § 2B1.1(b)(10)(C) in her initial brief, we do not consider this issue. *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (en banc) (holding that a party forfeits an issue when it fails to raise the issue in its initial brief).